650 So.2d 757 (1995)
Robert Terrell MARANTO and Vicki Maranto
v.
GOODYEAR TIRE & RUBBER CO., et al.
Nos. 94-C-2603, 94-C-2615.
Supreme Court of Louisiana.
February 20, 1995.
Rehearing Denied March 23, 1995.
*758 Donald J. Armand, Jr., Blanchard, Walker, O'Quin & Roberts, Mark E. Barham, Robert E. Arceneaux, Barham & Arceneaux, for applicant.
Joseph W. Greenwald, Edwin L. Blewer, Jr., Cook, Yancey, King & Galloway, for respondent.
JOHNSON, Justice.[1]
Plaintiffs filed this action against several defendants including Goodyear Tire Co. (hereafter Goodyear) and its insurer, Travelers Insurance Company (hereafter Travelers) in connection with an automobile accident. After several parties settled and/or compromised their claims, plaintiffs proceeded to trial against defendants Goodyear and Travelers. The matter was bifurcated and after the liability phase was tried, defendants were held 100% liable. Thereafter, a bench trial was held to determine if plaintiff's subsequent leg, hip and back injuries were related to the accident. After hearing testimony from both sides, the trial judge determined that plaintiff's surgery of October 22, 1989 was not associated with the accident and awarded her $3,000.00 in damages for soft tissue injuries and related medical costs for visits to her internist, up to approximately October 9, 1989.
Plaintiff then appealed to the Second Circuit Court of Appeal. In a 2-1 vote, the appellate court affirmed the trial judge's ruling. 643 So.2d 167. Thereafter, plaintiffs sought a re-hearing. The re-hearing panel issued an opinion re-affirming the trial judge's ruling. After receiving the opinion rendered by the re-hearing panel, plaintiff sought writs to this court arguing that this *759 matter was handled erroneously due to a clerical mistake that improperly assembled the subsequent panel. This court then ordered the Court of Appeal to reconsider the case with an en banc panel. 641 So.2d 533. After reconsideration, the Second Circuit was split with a 4-4 tie[2]. Four Judges affirmed the court's previous ruling which denied plaintiff relief. The other four judges joined the suggestions of Judge Brown, which reversed the findings of the lower court. 643 So.2d 173. Looking beyond the procedural mishap, we find that that the automobile accident was the cause-in-fact of plaintiff's herniated disc injury.

FACTS
On August 25, 1989 plaintiff, Vicki Maranto was involved in a three vehicle accident. While traveling in her husband's 1985 Chevrolet Suburban heading south on Hearne Avenue in Shreveport, Louisiana, plaintiff's vehicle was struck on the driver's side by a 1984 Lincoln Continental Mark IV, driven by Thelma Estes, as she traveled through the intersection of Hearne Avenue and Greenwood Road. Ms. Estes was operating a vehicle owned by her employer J. Lane Company. Prior to the collision between Ms. Estes' vehicle and plaintiff, Ms. Estes' vehicle was struck from the rear by a 1988 Plymouth van owned by defendant Goodyear, and operated by its employee, Robert Emerson. Ms. Estes was traveling north on Hearne Avenue and had stopped waiting to turn left onto Greenwood Road. The impact of the first collision caused Ms. Estes' vehicle to cross into the southward lane of Hearne Avenue and strike plaintiff's Suburban, causing extensive damage to the vehicle and blowing out both rear tires. The vehicle was later towed away from the accident scene by a wrecker to be repaired.
In its written reasons for the judgment, the trial court stated that the medical testimony from two orthopedic surgeons did not support a finding that Mrs. Maranto's disc injury was related to the accident. The issue to be decided by this court is whether or not the automobile accident caused plaintiff's herniated disc.

CAUSATION
In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3d Cir.1987); Richard v. Walgreen's Louisiana Co., 476 So.2d 1150 (La.App. 3d Cir.1985). Plaintiff must prove causation by a preponderance of the evidence. Morris v. Orleans Parish School Bd., 553 So.2d 427 (La.1989). The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Mart v. Hill, 505 So.2d 1120 (La. 1987); Villavaso v. State Farm Mut. Auto. Ins. Co., 424 So.2d 536 (La.App. 4th Cir. 1982).
At trial, plaintiff introduced the testimony of several medical doctors with whom she sought treatment. Mrs. Maranto stated that on August 28, 1989, the first business day after her accident, she visited her internist, Dr. William Hunt. Dr. Hunt stated that he initially treated Mrs. Maranto in the early 1980's. He further testified that Plaintiff informed him of an automobile accident that she was involved in just three days prior to her visit. He stated that plaintiff was very nervous and tremulous, and that she had general aches and pains. On cross-examination he noted that his medical report did not mention "general aches and pains," but said that he specifically remembered her condition.
Dr. Hunt gave her samples of Xanax, a nerve suppressant drug for her anxiety, and other over-the-counter medication such as Ibuprofen for her pain. Additionally, Dr. Hunt authorized a cortisone shot for plaintiff *760 in early October when her pain increased. Dr. Hunt further testified as follows:
Q. Have you ever found Vicki Maranto to be a person to magnify her complaints or injuries in any way?
A. No.
Q. You've found her to be a sincere, truthful person in relating her complaints?
A. Yes.
After unsuccessful treatment with Dr. Hunt, plaintiff sought the services of Dr. Carl Goodman, an orthopedic surgeon. Dr. Goodman examined plaintiff on October 17, 1989, at which time she stated that 90% of her pain was in her right hip and leg, and only 10% of the pain in her back. His exam revealed that she was unable to stand on the heel of her right foot due to weakness and her movements were limited because of right hip and leg pain. The low back area had spasms and tenderness throughout, which had a well healed scar from previous surgery. X-rays showed degenerative narrowing of the L4 and L5 discs with moderate lumbar scoliosis. Dr. Goodman's initial impression was that plaintiff had an L5 and possible L4 radiculopathy on the right. He gave her a second cortisone shot, an analgesic, sent her to physical therapy and told her to return in a week.
Two days later, on October 19, 1989, Dr. Goodman received a call from plaintiff complaining of increased pain. A magnetic resonance scan (MRI) showed an apparent extrusion of the L5 disc on the right side. Thereafter, on October 22, 1989, Dr. Goodman performed surgery, removing a ruptured disc.
In an effort to prove causation, Dr. Goodman was asked the following hypothetical question:
Q. Let's assume, Dr. Goodman, that the day of the accident, August the 25th, '89, let's assume that it was of a violent nature. Let's also assume that shortly after the accident, within a matter of a few hours, she became, had complaints of just general aches and pains all over, specific complaint of pain in the right rib area from the seat belt. Went home after the accident, went to bed, got up the next day and performed one visit on a heart patient for a few minutes, because of pain and hypertension could notor did not return to work Sunday, Monday, Tuesday, Wednesday or Thursday and saw a couple of patients on Friday. When I say saw the patients, she is a nurse that worked for the Group Home Services, home health services. And actually continued to see patients in that area up through the time she saw you. However, I want you to assume that during that period of time she always had some degree of painfrom the time of the accident had some degree of lower back discomfort or pain. And specifically localized in mid-September and was called to her attention after driving a car from one house to the other to visit and you know about the right leg pain starting in October. And also assume that she had no other intervening accidents or incidents during this time. She wasn't required to lift anyone, she didn't have to bathe any patients. She had no other traumas of any nature during that period of time between the time of this car wreck and the time you performed the surgery. Do you think that there is a reasonable medical basis for a causal relationship between this accident and the necessity for that surgery?
A. Based on what you just told me?
Q. Yes, sir.
A. Yes.
When asked if it was more probable than not that the disc and/or nerve was injured as a result of the accident based on the hypothetical question, again, Dr. Goodman responded affirmatively.
On cross-examination, defense counsel also posed a hypothetical situation to Dr. Goodman. Defense counsel's hypothetical was as follows:
Q. All right. You have your history there. I want you to assume, Doctor, that this calendar is an accurate record of Ms. Maranto's work as a nurse in home health care between the time of the automobile accident on August 25th and the time she came to see you. That she visited a patient on August 26th, the day after the accident, and assessed that patient's chest pain. That she took several days off, and I *761 want you to assume the sole reason she took those days off is because she was experiencing nervousness or anxiety. I mean, she had no pain whatsoever. No physical pain whatsoever or no low back pain or low back symptoms during those days. I want you to assume that she visited two patients on September 1st, '89, six on September 2nd, four patients on September the 4th. And then I want you to assume that on September 5th 1989, she graduated from part time to full time with Group Health Services and that she worked on September 5th for six hours, which was a regular full time day as far as they were concerned under their arrangement. The next day she worked six hours regular and two overtime. And so forth so that throughout that week she had 28.5 regular full time hours and eight visits part time. The next week she worked 36 hours. The week after that she worked 37 hours. The week after that 32 hours. The first week of October she worked 30 hours. The week before she came to see you, she worked 31 hours. She worked six hours the day before she came to see you. She worked six hours on October 17th, the same day she came to see you, right before she came for your appointment. And that youthe only other thing I want you to assume, Doctor, is that this work was full duty without limitation. And I want you to assume that the history she gave you is accurate. That she first experienced an onset of right hip and leg pain nine days before she came to see you, which would have put it on October the 8th. If that is your hypothet, isn't it true that you cannot say more probably than not that the accident herniated her disc?
A. Yes.
Additional medical testimony was given by Dr. Carl Springmeyer, also an orthopedic surgeon. Dr. Springmeyer examined plaintiff on February 26, 1992, at the request of defense counsel. Mrs. Maranto's attorney posed a very similar hypothet to Dr. Springmeyer as was asked of Dr. Goodman. Based on his similar scenario, Dr. Springmeyer's opinion was that there was a causal relationship between plaintiff's necessary surgery and her accident of August 25th, 1989.
Likewise, when he was asked by defense counsel to make a very similar assumption as Dr. Goodman, his opinion was such that he could not say more probable than not that the accident herniated her disc.
Dr. Goodman's testimony also revealed that he had patients who had ruptured lumbar discs who had no complaints for the first few months after being involved in an accident. Dr. Springmeyer also stated that he treated persons who initially did not have excruciating pain following a ruptured disc, and that a herniation becomes larger over time.
Plaintiff is aided in her burden of proving causation by the presumption described in Housley v. Cerise, 579 So.2d 973 (La.1991) wherein this court stated that:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
In order to defeat the presumption, defendant must show some other particular incident could have caused the injury in question. Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2d Cir.1986).
At trial, Mrs. Maranto testified that prior to the accident she was in good health. Although she had back surgery in 1975, she stated that she did not have any problems relating to her back until the accident. No evidence was introduced to negate the testimony that she was in good health before the accident. She also stated that she had immediate pain in her right side after being pushed against the seat belt. She described her pain to Dr. Hunt as general aches and pains. The record further shows that plaintiff started to experience back, leg and hip problems that required an injection of cortisone which was authorized by Dr. Hunt.
*762 Defendants attempted to relate plaintiff's injuries to her driving her vehicle "long distances" to visit patients in Haughton, La.[3] Alternatively, they would lead this court to believe that plaintiff's injuries were incurred while performing other job related duties. While medical testimony was such that everyday activities such as sneezing, driving, or coughing can herniate a disc, as the finder of fact, a court cannot speculate as to the vague possibilities for causation, when medical witnesses have established an event as to the probable cause of injury.
An appellate court will not set aside the trial court's or jury's findings in the absence of manifest error, or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. DOTD, 617 So.2d 880 (La.1993). In Mart v. Hill, 505 So.2d 1120 (La.1987), this court stated the two-part test for reversing a factfinder's determination on appellate review:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
(citing Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); See also Stobart, 617 So.2d at 882.
After reviewing the entire record, this court concludes that plaintiff's injuries were caused by the accident of August 25, 1989. Both orthopedic surgeons attributed her pain and back injuries to the accident in response to plaintiff's hypotheticals which appears to be a more accurate description of the facts. Defendant's hypothetical was misleading in that it asked the doctors to assume "she had no pain whatsoever" when medical testimony from Dr. Hunt was to the contrary. Moreover, the medical testimony revealed that there have been instances in which patients involved in accidents did not experience back pain until months later, despite suffering disc injuries in the collision.
In Dabog v. Deris, 625 So.2d 492 (La.1993), this court decided a similar issue as to causation. Plaintiff was injured while riding on a motorcycle that was struck by a truck. Immediately after the accident, plaintiff had serious headaches and within days experienced stiffness and pain in the legs, back, neck, and arms. After treating with a chiropractor for a few months, plaintiff was referred to a neurosurgeon. Nearly three months after the accident, the neurosurgeon, Dr. Kenneth Vogel, diagnosed plaintiff with a herniated lumbar disc. Dr. Vogel believed that the condition resulted from the accident. Slightly over a month later, he performed surgery and removed a herniated disc. At trial, the jury determined that the accident did not cause plaintiff's disc herniation. On appeal, the jury's denial of recovery was affirmed. However, this court reviewed the evidence and determined that the jury was clearly wrong and reversed that finding in so far as it denied recovery for the lumbar herniation.
By determining that plaintiff's injuries were not related to her accident, the trial court and appellate court committed manifest error that requires reversal. Thus, we conclude that plaintiff's herniated disc injuries were a direct result of the automobile accident on August 25, 1989. Therefore, the judgments of the lower courts are reversed and this case is remanded to the appellate court on the issue of quantum consistent with this opinion.
REVERSED AND REMANDED TO THE COURT OF APPEAL TO BE DECIDED EN BANC.
NOTES
[1] Pursuant to Rule IV, Part 2, Sec. 3, Victory, J. was not on panel.
[2] At the time this matter was considered by the Second Circuit Court of Appeal, J. Victory was a member and recused himself from the panel. Since that time, J. Victory was elected to the LA Supreme Court.
[3] Haughton, La. lies just outside the Shreveport-Bossier City area.