| .McMANUS, Judge.
This appeal arises out of an automobile accident that occurred on October 8, 1996. The defendants, Adolph C. Whalen III and The East Bank Consolidated Special Service Fire Protection District, stipulated to liability. Only the issue of damages went to a bench trial. The trial court’s judgment awarded plaintiff, Ms. Cathy Vinnett, $5,545.47 in medical expenses and $20,000 in general damages. Ms. Vinnett appeals thé judgment. We amend and affirm as amended.
On July 28, 1997, Ms. Vinnett filed a Petition for Damages against Adolph C. Whalen and the Jefferson Parish Fire Department [1] alleging that on October 8, 1996, Mr. Whalen, while operating a Jefferson Parish fire truck, rear-ended her *248 vehicle causing her to suffer damages. The following facts are not in dispute.
On October 8,1996; Ms. Vinnett was traveling westbound on Airline Drive towards the intersection of Airline Drive and North Howard Avenue in her 1989 Ford Thunderbird. Ms. Vinnett was traveling with her seven children. At the same time, Mr. Whalen, a Jefferson Parish fireman was [gdriving a 1990 Pierce Fire Truck westbound on Airline Drive, also heading toward North Howard Avenue. Mr. Whalen was traveling directly behind Ms. Vinnett. When Ms. Vinnett slowed down to stop for a red light, Mr. Whalen rear-ended Ms. Vinnett’s vehicle. Ms. Vinnett was wearing her seatbelt and sustained injuries to her neck, lower back and left shoulder. Ms. Vinnett’s children were injured also and settled their claims prior to the time Ms. Vinnett filed suit. The property damage to the vehicle, which amounted to $5,009.86, has been paid by the defendants. Defendants stipulated to liability; therefore, the issue of damages is the only one presented for our review.
At the trial on damages, the medical reports of Gulf Coast Medical Consultants,. New Orleans Orthopaedic Clinic, Plantation Chiropractic Centers and St. Charles General Hospital, and the video depositions of Dr. Robert A. Steiner and Dr. John Watermeier were stipulated to and admitted into evidence. Ms. Vinnett’s medical bills were also stipulated to and admitted into evidence.
Ms. Vinnett testified that she was stopped at a red light on Airline Drive when she was rear-ended by Mr. Whalen. Ms. Vinnett admitted that her children were not critically injured. At the scene of the accident, Ms. Vinnett declined to be taken to the emergency room. Ms. Vin-nett initially sought treatment from Gulf Coast Medical Consultants on October 9, 1996. She received physical therapy at Gulf Coast Medical Clinic, however, she was still experiencing pain so she was referred to Dr. Watermeier by her attorney. Ms. Vinnett admitted that she had previously filed personal injury claims, but she never experienced permanent disability from her prior injuries.
Ms. Vinnett’s chief complaints were pain to her back, neck and ^shoulder. While her back improved after physical therapy, Ms. Vinnett did not experience relief of her neck and shoulder pain. Ms. Vinnett testified that she experienced weakness and she could not raise her left arm nor sleep bn her left shoulder. Ms. Vinnett opted to have surgery in order to alleviate her symptoms of pain. After her surgery, she experienced a great deal of pain for about two months, however, she benefitted from the surgery and she has a greater range of motion in her shoulder, neck and arm.
At trial, Ms. Vinnett testified that she did not remember all of her prior accidents, however, she was discharged without any unresolved symptoms and she fully recovered from all of them. Ms. Vinnett testified that she answered that she “forgot” on her intake questionnaire form when she was requested to list any prior injuries to her neck and shoulder because she honestly did not remember them. Further, she testified that while she couldn’t remember everything, she was not trying to hide anything because she sent her former medical records to Dr. Water-meier. Ms. Vinnett stipulated to the reported accidents in her medical file for which she was treated by Dr. Stewart E. Altman at the referral of her attorney.
Ms. Vinnett did disclose to Dr. Water-meier that on May 19, 1998, she was involved in a car accident, however, Ms. Vinnett was not injured and she did not seek to file a claim.
Prior to her injuries from the October 8, 1996 accident, Ms. Vinnett had been employed as a cashier and as security personnel. After the accident, Ms. Vinnett was unable to work for a year because she could not turn her neck or lift her arms. Ms. Vinnett is now employed by Olan *249 Mills. Ms. Vinnett testified that she does not recall when she was released to work.
Dr. Jacqueline Cleggett-Lucas testified that Ms. Vinnett was treated at |4Gulf Coast Medical Consultants on October 9, 1996, after an automobile accident on October 8, 1996, where she had been rear-ended by a fire truck. She stated that Ms. Vinnett hit her head on the windshield and experienced immediate pain in her neck, back, and shoulders. Dr. Cleggett-Lucas noted that Ms. Vinnett disclosed that she had been in another motor vehicle accident about five months ago wherein she injured her neck and back, but she had been treated by Dr. Altman and recovered prior to the accident on October 8, 1996. Ms. Vin-nett also related that she was involved in another motor vehicle accident in 1995 where she injured her back and recovered.
Dr. Cleggett-Lucas conducted a physical examination that revealed Ms. Vinnett had full range of motion in her left shoulder and had spasm to her trapezius muscle. An X-Ray was ordered and pain medication was prescribed. Ms. Vinnett was also ordered to utilize modalities of moist heat and transcutaneous electrical nerve stimulation (TENS). Dr. Cleggett-Lucas saw Ms. Vinnett from October 17, 1996 to August 11, 1997. From October 17, 1996 to January 30, 1997, Ms. Vinnett’s physical examinations revealed that her left shoulder had a full range of motion with tenderness to the left glenohumeral joint area and trapezius muscle. The cervical spine exam demonstrated a full range of motion with tenderness and mild spasm referred to the base of the neck and the lumbar spine exam demonstrated a full range of motion with tenderness and mild spasm referred to the lumbar area.
On December 27, 1996, Ms. Vinnett was examined by Dr. Grunther, an orthopedist, who found that Ms. Vinnett had full range of motion of the cervical spine with symptoms at the base the neck. The lumbar spine demonstrated free range of motion with symptoms referred to the back. Ms. Vinnett continued to be treated by Dr. CleggetWLucas at the same time that | ashe was being treated by Dr. Watermeier. The record reflects that she last received treatment at Gulf Coast Medical Consultants on August 11,1997. Ms. Vinnett had surgery on July 17,1997.
In his video deposition, Dr. Watermeier, an orthopedic surgeon, testified that he saw Ms. Vinnett on January 6, 1997. Dr. Watermeier testified that he knew that Ms. Vinnett suffered from injuries to her neck and lower back in February of 1993, because she was treated by Dr. Davis, who had practiced medicine in Dr. Watermeier’s office. Dr. Watermeier did not obtain Ms. Vinnett’s prior medical records before he began treating her.
Dr. Watermeier obtained Ms. Vinnett’s history and learned that she was rear-ended by a fire truck in October of 1996. Ms. Vinnett complained of low back and neck pain after that accident. Dr. Water-meier conducted a physical examination and determined that she had a 50% range of motion of her neck. There was tenderness to the muscles of the neck, and she had a painful range of motion of her left arm and left shoulder. Ms. Vinnett’s lower back had a 75% range of motion and no spasms. The X-Rays showed no abnormality. Dr. Watermeier opined that Ms. Vinnett’s symptoms were consistent with lumbar and cervical sprain and contusions to her left shoulder. Dr. Watermeier then ordered an MRI of Ms. Vinnett’s neck, lumbar spine, and left shoulder. The results of the MRI of Ms. Vinnett’s shoulder and cervical spine, obtained on April 11, 1997, were normal. On April 21,1997, Ms. Vinnett still complained of pain in the neck and left shoulder, so Dr. Watermeier ordered a discogram and an arthroscopy. Dr. Watermeier explained that a disco-gram is a test where a dye is injected into the discs of the neck and the patient indicates whether there is pain when the dye is injected in order to determine if there is a symptomatic disc. On May 6, |fi1997, Dr. Sherman Brown performed the discogram. The cervical discogram revealed that there *250 were symptomatic discs at the C5-C6 and C6-C7 level, and the pain was caused by a radial fissure, which is a crack in the annulus. Dr. Watermeier opined that Ms. Vin-nett suffered from cervical disc syndrome and shoulder impingement syndrome. Dr. Watermeier further opined that Ms. Vin-nett’s pain was caused by a fissure in her discs. Dr. Watermeier stated that the only treatment for Ms. Vinnett’s pain was to surgically remove the symptomatic disc, the fissure, and the disc nucleaus. On July 17, 1997, Dr. Watermeier performed the two level anterior cervical fusion, removed the symptomatic discs, and replaced them with bone taken from Ms. Vinnett’s hip. During the arthroscopy, Dr. Watermeier examined the areas of injury and determined that Ms. Vinnett suffered from an impingement syndrome. He treated the impingement with a rotator cuff debridement, and shaved a partial tear of the rotator cuff.
Ms. Vinnett healed well after the surgery with the normal complaints of stiffness in her left shoulder and neck. On March 2, 1998, Ms. Vinnett complained that she was unable to handle the range of motion and stretching required in performing light duty work because she was experiencing some tenderness in her neck, back and shoulder. Dr. Watermeier referred her to physical therapy again. Dr. Water-meier opined that she could perform light duty work with motivation and physical therapy. During her office visits from March of 1998, to May of 1998, Ms. Vin-nett complained of some weakness in her shoulder and intermittent pain in the back of her neck. On May 19, 1998, she reported that she had been in another accident, however, she did not suffer any new injuries from it. On December 2, 1998, Dr. Watermeier advised Ms. Vinnett to return as needed.
17Pr. Watermeier regarded the operation on her neck and shoulder as successful and he relates the necessity of the operation to the vehicle accident on October 8, 1996. Dr. Watermeier assigned Ms. Vinnett 20% physical impairment. Dr. Watermeier did not believe that the fissures were a normal degenerative condition in Ms. Vinnett because she is a 29 year old woman who led an active lifestyle. Dr. Watermeier relates the fissures at the C5-C6 and C6-C7 discs to the October 8,1996 accident.
Dr. Watermeier testified that he based his evaluation on the history that Ms. Vin-nett provided to him. Dr. Watermeier admitted that a physician cannot relate those fissures to her accident on October 8, 1996, from the medical diagnostic tests alone, but must correlate those test results with complaints of pain, medical history, and physical examinations. Dr. Watermeier was not aware of these injuries which were reflected in Dr. Stewart E. Altman’s medical records:
(1) Ms. Vinnett injured her back and twisted her leg when she fell in a hole in the sidewalk on April 25, 1987.
(2) Ms. Vinnett was injured during the Shell explosion on May 5, 1988 when she jumped out of bed, and suffered from a contusion in the paraspinous muscle.
(3) Ms. Vinnett was injured on December 28, 1988,when a car that was backing up hit the side of her car and caused her to suffer from cervical sprain and lumbosacral sprain.
(4) On April 24,1989, a bag of ice fell on Ms. Vinnett’s foot at the Kart and Kary. She suffered from a contusion on her right foot.
(5) On November 29, 1994, Ms. Vinnett was injured in a car accident when a car pulled in front of her car and caused her to have to brake suddenly. She was diagnosed with cervical and lumbar sprain.
(6) On May 28, 1995, Ms. Vinnett was involved in an accident where a police car struck the right side of the rear of Ms. Vinnett’s vehicle. Ms. Vinnett was diagnosed with cervical *251 muscle spasm, trapezius muscle spasm, and lumbrosacral spasm.
|R(7) On March 1, 1996, Ms. Vinnett was rear-ended while parked at a stop light and she suffered from cervical sprain, lumbrosacral sprain and trapezuis muscle sprain.
Ms. Vinnett had consulted with an attorney for these accidents and she was treated by Dr. Altman for all of them.
Dr. Watermeier testified that his determination of causation was based on the history that Ms. Vinnett provided. Dr. Watermeier opined that he still related the fissures that were discovered in the disco-gram to the October,' 1996 accident because Ms. Vinnett was released by Dr. Altman for her prior injuries without any residual disability.
The defense presented the testimony of Dr. Robert A. Steiner, an expert in the field of orthopedic surgery. Dr. Steiner testified that he first saw Ms. Vinnett on July 22, 1998. She related the details of the accident and resulting injury as well as her treatment by Dr. Watermeier and Gulf Coast Medical Consultants. Dr. Steiner conducted a physical examination which revealed mild tenderness and soreness in the left trapezius region. The examination of left shoulder revealed healed orthro-scopic portal incisions. Dr. Steiner opined that there is no objective evidence in any of the records or the diagnostic studies that Ms. Vinnett sustained an injury to her cervical spine as a result of the October 8, 1996 accident. Ms. Vinnett sustained an injury to her cervical disc as a result of the October 8, 1996 accident because the records indicate that she had prior injuries to her neck.
On appeal, Ms. Vinnett argues that the trial court’s finding of fact relating to causation and damages are manifestly erroneous and that the trial court failed to correctly apply certain legal presumptions and requirements.
Ms. Vinnett argues that she did not attempt to conceal her prior injuries and that the trial court erred in finding that she lacked credibility.
|sMs. Vinnett further argues that the trial court failed to consider these eviden-tiary presumptions:
(1) When an individual is asymptomatic prior to an accident and suffers an onset of symptoms immediately following the accident, there is a presumption that the accident caused the injury.
(2) When a witness’s testimony is un-contradicted and it is not inherently incredible on its face, the witness is presumed to be telling the truth.
(3) When an individual has been in multiple accidents such that there is any doubt as to which of the various accidents resulted in injury, then the burden shifts to the defense to show that the accident did not result from the accident caused by the defendant’s fault.
(4) When there is a conflict in testimony between treating physician and the physician conducting the independent medical examination, the testimony of the treating physician should be given more weight.
(6) When there is a conflict of testimony among physicians, then positive findings as to the existence of a particular condition are entitled to greater weigh than negative findings.
(6) Aggravation of a pre-existing injury is compensable.
(7) When the defense causes an initial injury, then the defense is liable for all follow-up treatments, necessary or not, unless the defense proves that the plaintiff acted in bad faith seeking the treatment.
The main issue in the case sub judice is whether the October 8, 1996 accident caused the plaintiffs injuries, the extent of those injuries, and the necessity of the medical treatments that Ms. Vinnett received.
*252 The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 759. However, when the tort victim is in good health before the accident, then there is a presumption that the injuries |1nresulted from the accident, provided that the medical evidence establishes a reasonable possibility of causation. Shamsnia v. United Services Auto. Ass’n., 97-399 (La.App. 5 Cir. 10/28/97), 701 So.2d 1051, 1055, writ denied, 97-2964 (La.2/6/98), 709 So.2d 739; Maranto, 650 So.2d at 761. The defendant is then required to provide evidence to show some other incident which could have caused the injury. Shamsnia, 701 So.2d at 1055. There is a threshold requirement that the plaintiff be found healthy before the accident in question. Id.
The determination of the causation and extent of plaintiffs injuries are questions of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The appellate standard of review on factual questions is well settled. On appellate review of a factual determination, the reviewing court may not set aside the fact finder’s findings of fact in the absence of manifest error or unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880, 882-883 (La.1993). Thus, where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882-883.
Finally, we note that in making damage awards, the discretion of the Intrier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). In reviewing a damage award, the initial inquiry is .whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. Id.
Ms. Vinnett argues that the award of damages was insufficient to compensate her for her injuries. Specifically, she argues that the $20,000 general damage award for pain and suffering was inadequate and all of her medical expenses, totaling $66,545.69, should have been awarded. It is clear that Ms. Vinnett experienced injuries to her cervical and lumbar regions as a result of the October 8,1996 accident. However, as the trial court noted, Ms. Vinnett’s credibility is questionable. While she had an extensive history of injuries from previous accidents, Ms. Vinnett did not disclose them to her treating physicians. Also,Dr. Watermeier testified that he did not obtain Ms. Vinnett’s prior medical records and neither did Dr. Cleggett-Lucas. While the treating physicians’ medical skills were reliable, their determinations were based on Ms. Vinnett’s complaints. Specifically, Dr. Watermeier’s determination of the results of the discogram was based on Ms. Vin-nett’s subjective complaints, and Ms. Vin-nett’s lack of credibility undermines Dr. Watermeier’s determinations of causation and the extent of her injuries.
*253 The trial court awarded medical expenses only for Ms. Vinnett’s treatment at Gulf Coast Medical Consultants. After reviewing the evidence, we conclude that the trial court did not err in finding that the extensive treatment, including the surgery, that she received by Dr. Watermeier was | ^unnecessary. The record reflects that the actual expenses for Gulf Coast Medical Consultants totaled $5,758.00. Therefore, we adjust the award to $5,758.00 to reflect Ms. Vinnett’s actual Gulf Coast Medical Consultants expenses. We also find that the trial court did not abuse its discretion in awarding Ms. Vinnett $20,000 in general damages. For the foregoing reasons, we amend the judgment and affirm as amended.
AFFIRMED AS AMENDED.

. The proper party is the East Bank Consolidated Special Service Fire Protection District.