976 So.2d 216 (2008)
Earl WOOLFOLK and Barbara Woolfolk
v.
TRISM, INC., Larry Finley, and United States Fidelity and Guaranty Association.
Earl Woolfolk and Barbara Woolfolk
v.
Bill Watson Ford, Inc., National Union Fire Insurance Company of Pittsburgh and S. Coleman.
Nos. 2007-CA-0749, 2007-CA-0750.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 2008.
*218 A. Remy Fransen, Jr., Christopher J. Fransen, Fransen & Hardin, New Orleans, LA, for Plaintiff/Appellee, Earl Woolfolk.
Paul A. Eckert, Bastian & Associates, New Orleans, LA, for Bill Watson Ford, Inc. and National Union Fire Insurance Company of Pittsburgh, PA.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
The defendants-appellants, Bill Watson Ford, Inc. and National Union Fire Insurance Company of Pittsburgh, PA, appeal a personal injury judgment signed on March 9, 2007, in favor of the plaintiff-appellee, Earl Woolfork in the total sum, of $162, 737.00. We affirm.
This $162,737.00 was broken down in the judgment as follows: $38,000.00 for pain and suffering and mental anxiety; $18,744.00 for past medical expenses; $20,000.00 for future medical expenses; $60,993.00 for past lost income; $25,000.00 for loss of enjoyment of life. The defendants contend that the plaintiff is not entitled to recover anything, but make no objection as to the specific amount of any of these awards.
The injuries plaintiff suffered were sustained when the plaintiff's vehicle was struck on October 13, 1998, by a vehicle owned by Bill Watson Ford and operated by Sharil Coleman. The Bill Watson vehicle was insured by Bill Watson's co-defendant, National Union Fire Insurance Company of Pittsburgh, PA. These two co-defendants have taken a suspensive appeal jointly.
This is a fact intensive case and manifest error is the issue. Therefore, we look to the following pronouncement from Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, pp. 8-9 *219 (La.7/5/94), 639 So.2d 216, 220-221, for guidance:
In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), this Court held that the court of appeal should not upset the factual findings of a trial court absent manifest error or unless clearly wrong. A proper review, therefore, cannot be "completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record established that the finding is not clearly wrong." Id. at 1333. More recently, regarding this constitutional appellate review of fact in civil cases, La, Const, art. 5, § 10, we have had occasion to say in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), a case which involved the review of damages, that "the discretion vested in the trier of fact is `great,' and even vast," and in Stobart v. State, 617 So.2d 880, 882-83 [(]La.1993), which involved the standard of review of findings of fact, a "court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is, `clearly wrong,'" and "where two permissible views of the evidence exists, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Id. In each of these cases there was but a perpetuation of the principle set down in Arceneaux. Notwithstanding the Court's earlier guidance to reviewing courts in Stobart v. State through DOTD, 617 So.2d 880 (La.1993), it was not our purpose in that case to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset. Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. [FN5 omitted.] Of course, the reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support.
Id.
The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Virgil v. American Guaranty and Liability Ins. Co., 507 So.2d 825 (La.1987); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
Applying these principles to the question of expert testimony, this Court stated recently that:
"[W]here the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible." Asbestos v. Bordelon, Inc., 96-0525 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 966. Those "[credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the trier of fact's findings." Id. A fact-finder's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. Id. Thus, even if the testimony of both experts is considered credible, the trial court's choice of Asher's testimony over Boudreaux's *220 cannot be found to be manifestly erroneous or clearly wrong, and cannot be disturbed on appeal.
Brown v. Schwegmann, 05-0830, p. 7 (La. App. 4 Cir. 4/25/07), 958 So.2d 721, 725.
In addition to proceeding according to the precepts of the manifest error standard of review, we find that the plaintiff bears the burden of proof as to causation in this case. Maranto v. Goodyear Tire & Rubber Co., 94-2603, (La.2/20/95), 650 So.2d 757, 759. In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. Id. Plaintiff must prove causation by a preponderance of the evidence. Id. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id.
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991) Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error. Id., at 979.
The defendants do not challenge their responsibility for the Bill Watson vehicle. Their primary contention is that the plaintiff's injuries, if any, were the result of a prior auto accident which occurred almost exactly one year earlier on October 27, 1997, i.e., they were pre-existing injuries. Plaintiff's claims that the 1997 accident were consolidated with his suit arising out of the 1998 accident, but the 1997 claims appear to have settled. For that reason this appeal is limited to consideration of plaintiff's claims arising out of the 1998 accident.
Plaintiff counters that the 1997 injuries resolved themselves prior to the occurrence of the 1998 accident and that the injuries he currently complains of all arise out of the 1998 accident. We agree with the defendants that, as a matter of law, the plaintiff is not entitled to collect from these defendants for pre-existing injuries. The plaintiff does not contend otherwise. More importantly to the outcome of this appeal, we agree with the plaintiff that he is entitled to compensation for the aggravation of pre-existing injuries. The defendants do not dispute this legal principle.
All twelve of the jurors answered "yes" to the following interrogatory:
2. Was the negligence of the defendant, Sharil Coleman, employee of Bill Watson Ford, Inc., a legal cause of the injuries to Earl Woolfork.
Dr. Robert Ruel, who had been treating the plaintiff prior to the 1998 accident, testified that between July of 1998 and the occurrence of the accident on October 13, 1998, the plaintiff had been asymptomatic. When asked if the plaintiff had new complaints on October 13, 1998 relative to his neck, shoulder and left hip, he responded, "Yes." The plaintiff testified that the 1998 accident occurred when the plaintiff was driving to keep an appointment with Dr. Ruel which he had scheduled in order to be cleared to go back to work as his symptoms from the 1997 accident had resolved themselves.
The plaintiff testified that immediately prior to the 1998 accident he experienced *221 "a little stiffness from time to time," but that he "really wasn't having any problem with his neck."
The plaintiff had an MRI done on September 10, 1998, approximately one month prior to the accident, which showed no L5-S1 herniation that would push against the left SI nerve root. A later MRI, done on June 29, 2005, shows such a herniation. This herniation could not be attributed to the 1997 accident or any other event occurring prior to September 10, 1998 MRI. It was Dr. Nutik's opinion that the hermniation could have been caused by a 1984 work related accident.
The defendants admit in brief that the plaintiff's pre-existing cervical and lumbar conditions "were exacerbated by the October, 1997 automobile accident." The defendants' also state in their brief that: "According to Dr. Ruel, the subsequent October 13, 1998 automobile accident aggravated his condition." However, the defendants take the position that the jury was manifestly erroneous in finding that the plaintiff's injuries were the result of the 1998 accident. The defendants contend that it is impossible to determine to what extent the plaintiff's condition is attributable to aggravation of pre-existing injuries versus how much is attributable to the pre-existing injuries alone. The plaintiff counters that the jury accepted Dr. Ruel's conclusions as to causation as they were entitled to do. We agree with the plaintiff. After reviewing the record as a whole we find that the record supports the jury's finding in favor of the plaintiff as to causation.
The defendants also contend that the award of $60,993.00 for past lost income was manifestly erroneous. The plaintiff eventually went back to work after the 1998 accident, but only in a diminished capacity. He was no longer a "beat cop." Instead, he specialized in the identification of stolen vehicles. He testified that eventually, in January of 2005, his pain had reached a level where he had to give up work entirely, in spite of being the type of person who liked to work in general and who particularly liked the kind of work in which he was engaged.
His claim for past lost wages is based on a claim for reimbursement for annual leave and sick time which he had to use in order to supplement his compensation which had been reduced because of inability to work at full capacity as a result of the 1998 accident. The defendants do not contest this theory of recovery, but they argue that the plaintiff failed to prove that his use of the annual leave and sick time was attributable to the 1998 accident.
The defendants note that the plaintiff had not yet returned to work following the 1997 accident at the time the 1998 accident occurred; that he could not recall when he returned to work.; that the plaintiff's physician, Dr. Ruel, did not specify whether the plaintiff's absences are the result of either automobile accident; and that Dr. Ruel never testified that Dr. Woolfolk's inabililty to return to work was the direct result of the 1998 accident.
In order to be entitled to an award for lost wages, a plaintiff must prove positively that he would have been earning the wages but for the accident in question. Falgout v. Louis-Jeune, 00-2452, pp. 10-11 (La.App. 4 Cir. 10/3/01), 799 So.2d 610, 617, citing Boyette v. United Services Automobile Asso., 00-1918, p. 3 (La.04/03/01) 783 So.2d 1276, 1279. With respect to past wages, the plaintiff bears the burden of proving the amount of the lost wages and the amount of time missed from work as a result of the accident. Stark v. National Tea Co., 94-2633, p. 7 (La.App. 4 Cir. 5/16/95), 655 So.2d 769, 774-775, citing Thibodeaux v. USAA Cos. *222 Ins. Co., 93-2238, p. 14 (La.App. 1st Cir.11/10/94), 647 So.2d 351, 360. Past lost earnings are susceptible of mathematical calculation from proof offered at trial, and an award for this element of damages is not subject to the much discretion rule. Stark, supra. However, for purposes of determining this type of damages, the amount of lost earnings need not be proved with mathematical certainty, but by such proof as reasonably establishes the claim. Lewis v. State Farm Ins. Co., 41,527, p. 17 (La.App. 2 Cir. 12/27/06), 946 So.2d 708, 722.
The plaintiff's claim in this regard was supported by the testimony of his expert forensic economist, Shael Wolfson. His testimony was based on correspondence from Janice Roussel, the personnel director of the City of New Orleans, Department of Police, detailing the number of hours of sick and annual leave time lost. Mr. Wolfson also made use of documentation supplied by Stephanie Landry, another personnel director at the NOPD regarding plaintiff's wages over the years and total sick and annual leave from June 4, 1999, until trial.
Dr. Ruel opined that the plaintiff could not go back to active police work in the sense of being a "beat cop" or an "auto cop." When the defendants cross-examined the plaintiff, they did not raise the issue of the relationship between the 1998 accident and the plaintiff's ability to work. We find that there is sufficient evidence in the record from which the jury could reasonably infer that the plaintiff's inability to return to work was related to the 1998 accident. Accordingly, we find no error in the award for past lost wages.
In their final assignment of error, the defendants complain that the jury was manifestly erroneous in granting the defendant an award of $25,000.00 for loss of enjoyment of life based on the contention that the plaintiff never testified that he could do the activities that gave him enjoyment following the 1997 accident.[1] In other words, the defendants argue that the plaintiff failed to prove that he was not already disabled from doing the activities he enjoyed as a result of the 1997 accident and that his loss of enjoyment cannot, therefore, be attributed to the 1998 accident. An award for loss of enjoyment of life requires showing that the plaintiff's lifestyle was detrimentally altered or that the plaintiff had to give up activities because of the injury. Lewis, supra, 41,527, p. 20, 946 So.2d at 723.
The defendant testified that he used to fish and work out regularly which he could no longer do. The plaintiff was asked:
Q: What affect [have] your disabilities and your complaints of pain since '98, what effect has that had on your life in general? You know what I'm talking about? Just day-to-day, can you tell us about that?
A: It's like I said, my hobby is working out. I like exercise and this is one of the things I look forward to. There [was] a point in time that I would work out every day but it diminished down to Monday, Wednesday and Friday . . . It got to the point where it was a struggle. I couldn't do that anymore so  I don't smoke. I don't drink. I don't go to night clubs, and I got a lot of enjoyment out of doing that, and from time to time, I used to fish and I don't do that anymore because you're sitting in one place like that and it wasn't any enjoyment *223 out of that at all. As far as my, from a recreational standpoint, that has totally diminished: There's nothing there anymore with that.
In the context of the record as a whole, a jury could easily and reasonably infer that the plaintiff is referring to changes that occurred as a result of the 1998 accident, because in making the finding attributing the cause of plaintiff's injuries to the 1998 accident, the jury, in effect, is saying that they believe the plaintiff and Dr. Ruel that plaintiff's pre-1998 accident symptoms had resolved themselves prior to the 1998 accident. Therefore, the pre-1998 accident injuries could reasonably be assumed not to be the cause of the plaintiff having to give up the life activities he enjoyed so much. It follows that the only reasonable conclusion to draw based on the record as a whole is that his loss of enjoyment of life is attributable to the 1998 accident.
For the foregoing reasons, the judgment of the trial court is affirmed, and the defendants shall bear the costs of this appeal.
AFFIRMED.
NOTES
[1] The defendants object to the award for loss of enjoyment of life per se, but do not challenge the amount of the award.