# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 24-398

DERRICK LEBLANC

VERSUS

AMERICAN ALTERNATIVE
INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2020-0686
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## WILBUR L. STILES
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Byron O'Neal**
**O'Neal Law Firm**
**1847 Sterkx Road**
**Alexandria, LA 71301**
**(318) 487-8787**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Derrick Leblanc**

**Kyle M. Beasley**
**Plauché, Smith & Nieset, LLC**
**Post Office Drawer 1705**
**Lake Charles, LA 70601**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Calcasieu Parish School Board**
      **American Alternative Insurance Company**
      **Ladonna Atwell**

**STILES, Judge.**

Plaintiff Derrick Leblanc filed suit, alleging that he sustained personal injury when a school bus struck his vehicle. Plaintiff appeals a jury's determination that he did not suffer an injury in the accident. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In the Petition for Damages instituting this matter, Plaintiff alleged that, on April 11, 2019, he was exiting his vehicle in the parking lot of a fuel station when a Calcasieu Parish School Board (CPSB) school bus struck his vehicle, causing personal injury and property damage. Plaintiff named CPSB, American Alternative Insurance Company, and Ladonna Atwell as defendants.

CPSB later stipulated to liability due to the "contact between the two vehicles." The parties settled Plaintiff's property damage claim for $3,398.94. Plaintiff's personal injury claim proceeded to an April 2024 jury trial where Defendants questioned whether Plaintiff sustained any injury as a result of the low speed impact between the school bus and Plaintiff's vehicle.

At trial, Plaintiff explained to the jury that when he arrived at the fuel station, the "bus driver was trying to pump some gas" and that he "pulled on the side of her." Plaintiff stated that as he began exiting his vehicle with one foot on the outside of the car, he heard a loud "crash." He stated that the bus driver, Ms. Atwell, "jumped" from her bus and asked whether he was okay. He initially testified that he told Ms. Atwell that he was "okay," but then later testified that he told her that he was "not alright." Plaintiff explained to the jury that the impact had caused his car door to hit him in the lower back.

Defendants questioned Plaintiff's account of the low speed collision.[1] Ms. Atwell stated that she immediately stopped when she heard the "crunch" of the collision. Contrary to Plaintiff's testimony, Ms. Atwell explained that she did not get out of the bus. Instead, her only contact with Plaintiff was in opening her window and informing him that she notified her supervisor of the collision. Ms. Atwell denied that Plaintiff reported any injury to her. Rather, Plaintiff said nothing to her. Ms. Atwell explained that she was "very" surprised when she learned that Plaintiff was making a claim for injury. Dave Casper, the claims adjuster for CPSB's risk management department, responded to the scene after Ms. Atwell notified her supervisor of the collision. Referencing his report from the April 11, 2019 accident, Mr. Casper testified that Plaintiff informed him that he was not injured.

Defendants further pointed out that when Plaintiff sought treatment after the incident, he largely reported to health care providers that he received injury from falling back into the car. He did so when he visited an urgent care facility on the day of the accident where he complained of low back pain.

Almost two weeks later, Plaintiff visited Dr. Katrina Rankins, a chiropractor who had treated him for earlier injuries. Dr. Rankins explained at trial that Plaintiff reported lower back pain with pain radiating into his left leg. Dr. Rankins stated that although she had treated Plaintiff for a 2018 accident resulting in mild low back pain, she considered Plaintiff's complaints from the April 2019 bus incident to be a new injury as Plaintiff complained of severe pain and an MRI revealed a herniation at the L4-L5 level. Dr. Rankins referred Plaintiff to Dr. Clark Gunderson, an orthopedic

---

[1] When defense counsel asked Ms. Atwell about the speed she was travelling, she responded that "I don't - - you can't - - like, you just have to kind of idle out. You're just taking off. You're at a gas pump; you can't go fast. You're just moving to get out."

surgeon, who treated the herniation with two steroid injections. Dr. Gunderson recommended surgical intervention as did Dr. George Williams, an orthopedic surgeon who continued treating Plaintiff following Dr. Gunderson's retirement.

While Dr. Rankins, Dr. Gunderson and Dr. Williams attributed the herniation to the trauma of the bus accident, each physician acknowledged on questioning by defense counsel that their opinion regarding causation was due, at least in part, to Plaintiff's subjective complaints of pain following the April 11, 2019 accident. Defendants, however, focused on the fact that Plaintiff failed to inform Dr. Gunderson or Dr. Williams of a history of accidents he suffered from 2016 through 2018 that resulted in treatment for low back pain. Moreover, each acknowledged that there was no objective medical evidence that would link Plaintiff's condition to the accident. Dr. Neil Romero, an orthopedic surgeon who rendered a second medical opinion, also acknowledged the absence of objective medical evidence that would link Plaintiff's condition with the incident and confirmed that the only way to arrive at a conclusion that Plaintiff's lumbar condition was caused or exacerbated by the accident would be to take Plaintiff's "word for it."

Following deliberations, a unanimous jury responded "No" when asked whether "Derrick Leblanc suffer[ed] an injury as a result of the April 11, 2019 accident[.]" By corresponding judgment of May 9, 2024, the trial court denied Plaintiff's claims against Defendants and dismissed the claims with prejudice.

Plaintiff appeals, asserting that:

(1)  The Jury ignored the uncontradicted medical evidence and testimony and committed legal error in failing to find that the Appellant, Derrick LeBlanc was injured by the subject April 11, 2019 accident. In the alternative, the Jury committed manifest error by opining that the Appellant, Derrick LeBlanc was not damaged and not injured when all medical testimony on this fact was uncontradicted.

3

(2)	The Jury erred in not awarding Past-Future Medical Expenses, Special Damages and General Damages.

**DISCUSSION**

*Causation*

The plaintiff in a personal injury suit bears the burden of proving the causal relationship between the injury sustained and the accident purportedly causing the injury. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So.2d 757. The plaintiff must prove causation by a preponderance of the evidence. *Id.* Thus, the causal relationship inquiry is "whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident." *Id.* at 759.

The supreme court has "consistently held that causation is a factual finding[.]" *Detraz v. Lee*, 05-1263, p. 7 (La. 1/17/07), 950 So.2d 557, 561. In order to reverse such a finding, "an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." *Id.* at 561. Importantly, in the event there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

Further, to the extent a jury's factual findings are based on determinations regarding the credibility of witnesses, "the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Thymes v. Golden Nugget Lake Charles, LLC*, 23-100, p. 4 (La.App. 3 Cir. 11/2/23), 373 So.3d 129, 133 (quoting

4

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989)), *writ denied*, 23-1576 (La. 1/24/24), 378 So.3d 69.

As he did at the trial court, Plaintiff suggests that all medical providers—Dr. Rankins, Dr. Gunderson, Dr. Williams, and Dr. Romero—"rendered testimony proving a causal relationship between the subject accident and [Plaintiff's] injuries, severe back pain, whether it be new onset and/or aggravation of a pre-existing condition." Recognizing Defendants' challenges to his credibility, Plaintiff acknowledges that he was a "poor historian" of his previous injuries. Plaintiff contends, however, that Defendants neither contradicted nor disproved what he asserts was objective medical evidence and testimony as to causation.

Plaintiff points out that Dr. Rankins testified that, following the April 11, 2019 accident, she identified the objective findings of spasm and that the post-accident MRI revealed an obvious L4-L5 herniation. Dr. Gunderson also testified that, upon examination, Plaintiff demonstrated reflex deficiencies that "correlate[d]" with the objective finding on the MRI. Dr. Williams, who assumed Plaintiff's care following Dr. Gunderson's retirement, also confirmed "tenderness" on palpation, which he identified as an objective finding, as well as limitations in Plaintiff's range of motion. Dr. Williams explained that Plaintiff's complaint of radiating left leg pain correlated to the L4-L5 herniation identified by the MRI. Like Dr. Rankins and Dr. Gunderson, Dr. Williams related those findings to the April 11, 2019 accident.

While Defendants focused on the fact that Plaintiff failed to disclose his prior complaints of low back pain due to accidents in 2016 and 2018, Plaintiff points out that he also called Dr. Romero to the stand. Dr. Romero, who rendered the second medical opinion, had access to Plaintiff's full medical history, including documentation of Plaintiff's earlier low back complaints. Plaintiff references that

portion of Dr. Romero's testimony where the physician explained that, even though the Plaintiff had earlier complained of radicular leg symptoms during his treatment with Dr. Rankins, he "objectively could have had an aggravation due to this accident."

Framing this evidence as uncontradicted, Plaintiff contends that he was thus entitled to application of the principle that a person's injuries are presumed to have resulted from an accident if, prior to the accident, the person was in good health and, after the accident, the symptoms of the injury appear. *See Housley v. Cerise*, 579 So.2d 973 (La.1991).

Plaintiff's argument, however, ignores the presumption's requirement that the injured person be in good health before the accident and that, starting with the accident, the symptoms of the disabling condition appeared. *Housley*, 579 So.2d 973. In *Housley*, Mrs. Housley presented positive medical evidence that she was in good medical condition before a fall at her apartment building but emergency room records demonstrated that, immediately upon the fall, her amniotic sack ruptured, which in turn caused her to undergo an emergency caesarean section. *Id*. The supreme court explained that "[t]he court of appeal, by failing to consider the evidence of Mrs. Housley's physical condition prior to the fall and the close temporal relationship between the fall and the rupture of her water bag, erroneously reversed the trial court's finding of causation." *Id*. at 981.

In contrast, the medical records in this case demonstrate Plaintiff's long-time complaints and treatment for low back pain, including a 2016 automobile accident that caused low back pain that Plaintiff rated 10 out of 10, a 2017 fall from a truck that caused low back pain that Plaintiff rated 8 out of 10, and a 2018 automobile accident for which Plaintiff received treatment for low back pain only months before

the school bus incident. Further, it is significant for review purposes that the trial court in *Housley*, in fact, found causation. In this case, the trial court advised the jury of the *Housley* presumption, but the jury distinctly denied that "Derrick Leblanc suffer[ed] an injury as a result of the April 11, 2019 accident[.]"

In *Lewis v. National Union Fire Ins. Co.*, 23-700 (La.App. 3 Cir. 4/3/24), 386 So.3d 1117, this court addressed a factually and procedurally similar case in which the plaintiff complained that she had offered unanimous medical testimony regarding causation, yet the jury determined that the defendants' negligence did not cause the plaintiff's injuries. The panel explained that the plaintiff's characterization of evidence assumed that the jury accepted the plaintiff's attribution of the onset of her injuries to the subject accident. *Id.* However, the plaintiff's credibility was a "foundational inquiry presented to the jury" as the medical providers confirmed that their opinions regarding causation were dependent on the plaintiff's relation of her onset of pain to the particular accident. *Id.* at 1120. The plaintiff's omission of the occurrence of an earlier accident was noteworthy, with the panel remarking that "the jury could have found that Plaintiff's omission of the occurrence of the earlier accident undermined her credibility as a historian to her health care providers." *Id.* at 1121. Leaving the jury's credibility assessments undisturbed, the panel found that the record "offer[ed] a reasonable basis for the jury's rejection of Plaintiff's claim." *Id.*

Plaintiff's credibility in this case was likewise a "foundational inquiry." Defendants made the jury aware of the minimal nature of the collision, of Plaintiff's inconsistent reporting as to whether he was hit by his car's door or whether he fell into the car, and of witness testimony indicating that he did not report injury at the scene despite his claim that he did so. Defendants further presented video

7

surveillance footage in order to undermine Plaintiff's claim that he suffered physical limitations following the accident. In light of that evidence, the jury could have determined either that Plaintiff was not hit by any portion of his car, as called into question by Defendants, or that he failed to prove that he suffered any injury, at all, given the minimal nature of the contact.

Further, to the extent Plaintiff contends that the jury erred in failing to apply the *Housley* presumption, credibility was again a critical inquiry as the presumption requires a demonstration that the plaintiff was in good health before the accident and that symptoms appeared thereafter. The jury was presented with voluminous medical records showing Plaintiff's long history of accidents and preexisting low back pain, which at times, Plaintiff had reported as 10 of 10 on the severity scale. On their questioning of Plaintiff regarding those earlier injuries, Defendants pointed out to the jury that Defendant was deposed in 2020 and had denied previous treatment for low back pain.

Further, while Plaintiff suggested that his earlier symptoms had subsided before the April 11, 2019 accident and worsened thereafter, the jury was free to question or reject that account. Not only did Plaintiff vary in relating details of the occurrence of the accident, but he plainly omitted the details of his earlier injuries in his treatment with his orthopedic surgeons and did so again during the course of litigation. This court has previously explained that the presumption of causation "does not apply and/or is overcome should the jury conclude the plaintiff was not credible and the claimed injuries were not caused by the accident." *Dore v. Mitsui Sumitomo Ins., USA, Inc.*, 12-875, p. 4 (La.App. 3 Cir. 5/22/13), 117 So.3d 231, 235, *writ denied*, 13-1953 (La. 11/8/13), 125 So.3d 1094.

Finally, we note that even if the jury had determined that Plaintiff demonstrated that he was entitled to the application of the presumption of causation, a defendant may rebut that presumption upon a showing that some other particular accident could have caused the injury in question. *See Maranto*, 650 So.2d 757. Again, the jury was informed of Defendant's medical history evidencing a series of accidents involving low back pain, including one for which Plaintiff sought treatment only months earlier.

Given those circumstances, we find that the record supports the jury's determination that Plaintiff failed to prove that he suffered injury as a result of the April 11, 2019 accident. Causation is a factual determination. When there can be multiple permissible views or interpretations of the evidence, a reviewing court does not have the authority to replace its view with that of the factfinder. *See Detraz*, 950 So.2d 557. Therefore, we leave the jury's verdict undisturbed.

*Damages*

This above determination regarding causation pretermits further consideration of Plaintiff's final contention that the jury erred in failing to award damages.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to Plaintiff/Appellant Derrick Leblanc.

**AFFIRMED.**