1 .WILLIAM H. BYRNES III, Chief Judge.
STATEMENT OF THE CASE
On October 25, 1999 Marie Louise Bro-yard filed suit for injuries allegedly sustained on January 15, 1999 when the taxicab in which she was riding was struck from the rear by a car driven by Theoplious Rainer, Jr. Ms. Broyard named as defendants Mr. Rainer, his insurer, Infinity Insurance Company (Infinity), the taxicab owner’s uninsured/underinsured motorist insurer, National Casualty Company (National), and Ms. Broyard’s uninsured/underinsured motorist insurer, State Farm Mutual Automobile Insurance Company (State Farm). According to the petition, Ms. Broyard claimed severe, permanent and disabling injuries to the structures, tissues and muscles of her body, including back, neck and knee sprains and sought compensation for past, present and future mental and physical pain and suffering, medical expenses, loss of enjoyment of life and any other damages available under state and federal constitutions.
National answered, specifically alleging Ms. Broyard’s failure to mitigate damages and third-party negligence, and cross-claimed against Mr. Rainer and Infinity for any damages for which it might be cast. State Farm answered with a I general denial and claim of offset to the extent of other available insurance and cross-claimed against Mr. Rainer, Infinity and National. Infinity answered, specially pleading comparative negligence and third-party negligence and alleging that Ms. Broyard’s injuries were caused by a subsequent injury unrelated to the accident in question.
National, Mr. Rainer and Infinity answered State Farm’s cross-claims.
. National filed a motion for summary judgment, and Infinity filed a motion for partial summary judgment seeking dismissal of claims for damages arising out of Ms. Broyard’s alleged subsequent fall at her daughter’s home. These motions were heard on November 7, 2001 and on November 14, 2001 the trial court rendered judgment in favor of National and Infinity dismissing Ms. Broyard’s claims for injuries caused by Ms. Broyard’s having fallen at her daughter’s home on January 17, 1999, subsequent to the accident in question. These injuries included a fracture of the right patella, sprain of the left ankle, sprain of the left wrist and injury to left shoulder first diagnosed on February 1, 1999. Ms. Broyard did not seek supervisory review of that judgment.
On Ms. Broyard’s motion and in light of her representation that she had settled her claim against State Farm, the trial court ordered State Farm’s dismissal on August 12, 2002.
On Infinity’s motion in limine seeking dismissal of its insured for Ms. Broyard’s failure to have served Mr. Rainer, the trial court dismissed with prejudice Ms. Bro-yard’s action against Mr. Rainer. On *797 State Farm’s motion, the h trial court dismissed with prejudice State Farm’s cross claims against Mr. Rainer and Infinity.
Following a bench trial on August 28, 2001, the trial court rendered judgment in favor of Ms. Broyard and against Infinity in the amount of $10,000 for general and special damages for past, present and future physical and mental pain and suffering and medical expenses, for all court costs and expert witness fees and judicial interest from the date of demand. The trial court also dismissed with prejudice Ms. Broyard’s claims against National.
From that judgment Ms. Broyard and Infinity appeal.
STATEMENT OF FACTS
The trial court found in its reasons for judgment that Ms. Broyard was a back seat passenger in a taxicab that was rear-ended while stopped at a stop sign on Chef Menteur Highway on January 15, 1999. After the accident, Ms. Broyard was taken to Ochsner Hospital.[1] The trial court reviewed the expert testimony of Ms. Bro-yard’s treating physician, Dr. Michael Harlan, who examined her at the Ochsner emergency room. According to Dr. Harlan, Ms. Broyard complained only of a sharp, shooting chest pain and muscle aches. Significantly, she did not complain of right knee, left ankle or left wrist pain. Furthermore, the doctor’s musculoskeletal examination revealed no evidence of a fracture in her extremities, and she had a good range of motion of her joints and no joint tenderness or |4swelling. Dr. Harlan had her walk around to make sure there were no obvious fractures, and Ms. Broyard had no trouble doing this. Because of her complaint of chest pains, he ran an electrocardiogram (EKG) test that showed no change from Ms. Broyard’s last EKG, so that he was able to reassure her that the chest pain was not a signal of an injury to her heart. Dr. Harlan diagnosed musculo-skeletal chest pain of the chest wall (not the internal organs such as the heart) secondary to the accident.
The trial court found that on January 17[2] Ms. Broyard returned to the Ochsner emergency room complaining of right knee, left wrist and left ankle pain as a result of a fall at her daughter’s home earlier that day. Ms. Broyard gave a history of blacking out, although at trial she denied this history. Dr. Harlan again saw Ms. Broyard and diagnosed a . right knee fracture and sprains of her left wrist and ankle. His physical examination noted swelling and tenderness associated with pain over these areas.
Dr. Harlan opined that Ms. Broyard’s fall could have been caused by several factors, since she was then 74 years old with a diagnosed heart condition, coronary artery disease. Dr. Harlan did not connect the fall to the automobile accident.
Dr. Michael Wilson, an Ochsner orthopedic physician, treated Ms. Broyard for her fractured knee and ankle sprain from January 20,1999. He had no opinion as to the probable cause of her fall. Likewise, Dr. Joseph Murray, Jr., Ms. |,.¡Broyard’s primary treating physician, testified that he could not render an opinion as to the cause of her fall.
*798 The trial court noted Ms. Broyard’s testimony that she was stiff all over on the day of the second accident, that she could not move her legs, after the first accident and that her legs gave way when she attempted to stand up at her daughter’s home just prior to the second accident. Furthermore, the trial court found that this testimony was not corroborated by a single medical expert or treating physician or medical report of Ms. Broyard’s complaints to the doctors.
STANDARD OF REVIEW
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), p. 4, 666 So.2d 612, 614. Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Therefore, it is well settled that we as a court of appeal may not set aside the trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Where there is a conflict in the testimony, the trial court’s reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even had we felt that our own evaluations and inferences would have been as reasonable. Stated another way, where, as here, there are two permissible views of the evidence concerning the cause of Ms. Broyard’s wrist, ankle and knee injuries, the fact finder’s choice between them | ¿Cannot be manifestly erroneous or clearly wrong. As an appellate court, we must constantly have in mind that our initial review function is not to decide factual issues de novo. It is only where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, that we may find manifest error even in a finding purportedly based upon a credibility determination. But where, as here, such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one or more witnesses (the treating physicians in this case), that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
INFINITY INSURANCE COMPANY’S FIRST ASSIGNMENT OF ERROR: The Trial Court’s conclusion that because of Ms. Broyard’s pre-existing heart condition she suffered emotional distress attributable to her chest pain immediately following the accident is not supported by the evidence.
In its reasons for judgment, the trial court found:
Because of her previous heart condition, Ms. Broyard suffered emotional distress due to her chest pain immediately following the accident. Therefore, the Court finds an award of $10,000 for general and special damages adequate to compensate Ms. Broyard for her loss.
The only evidence concerning the time between the occurrence of the automobile accident and Ms. Broyard’s arrival at Ochsner where she received the |7good news that her chest pain was not attributable to a heart problem is Ms. Broyard’s trial testimony.
According to Ms. Broyard, when the cab in which she was a passenger was struck from behind, she was the only person in the backseat, and was not wearing a seat belt. She testified:
I went forward. My legs hit the front seat, my arms, my neck. And I was hurting all over.... When he hit, I *799 fell forward to the front of the seat, the back of the driver’s seat. And that’s when my neck was pulled, my back was pulled and my legs, like my legs were going up under the seat.
Ms. Broyard testified that the driver called the police, and she asked him to call an ambulance for her. She asked the policeman who arrived after the 7:50 a.m. accident to take her to Ochsner. When the policeman went to talk to the cabdriver, she “screamed and asked the policeman to please call an ambulance.” The policeman told her the driver could get to Ochsner faster than an ambulance could be called, so she waited for the driver to finish with the police investigation whereupon he drove her and a woman who was a passenger in the front seat of the cab to the Ochsner emergency room.
Ms. Broyard testified that when she arrived at the emergency room, she was placed in a wheelchair and her daughter took her in. Ms. Broyard did not explain how her daughter happened to be present to perform this function. The daughter apparently vanished, because Ms. Broyard made no further reference to her presence at the hospital. Ms. Broyard testified that Ochsner personnel called a cab for her at the conclusion of her testimony and the cabdriver took her home, | ¿whereupon, according to Ms. Broyard, “I managed to get in the house and get on the sofa in the den.”
She testified that she told the doctor that she had been in an accident, that she couldn’t move her legs, neck or back and was in pain. The doctor bent her legs up and examined her neck, back and legs, but did not take any specific test or x-rays. She was released, put in a wheelchair and rolled to the front to wait for a cab.
This testimony is contradicted by the Ochsner emergency room records and by Doctor Harlan’s deposition testimony that she was given an EKG test that morning, and that he compared the EKG to her previous recorded EKG and found no difference between the two tests. The trial court acted reasonably in accepting Dr. Harlan’s testimony and the cqrroborating hospital records.
According to the Ochsner Emergency Department Record dated January 15, 1999, Ms. Broyard was seen at 11 a.m. complaining of generalized muscle aches and a sharp shooting intermittent chest pain. She denied numbness, paresthesias, loss of consciousness or neck pain. The chest pain was in the anterior chest wall and was a soreness not at all like her previous angina. The Ochsner Emergency Department Record dated January 15, 2000, showing Dr. Harlan as the attending physician, contradicts her testimony further. According to the report, she evidenced no signs of neck injury or cervical spine tenderness, no heart issues, no soft tissue or bony tenderness, joint swelling or tenderness, abrasions, hematomas or lacerations. She demonstrated full range of motion in all joints. Dr. Harlan prescribed Tylenol 325 mg., 2 tablets every four hours as needed for chest discomfort.
The emergency room report is consistent with the police report of the accident that described the impact as a “bump” and noted no signs of damage or Rimpact on either vehicle. Photographs of the vehicles confirmed the damage assessment.
Thus, Ms. Broyard’s concern that the accident had triggered some sort of heart problem lasted for approximately four hours, from 7:50 a.m., when the accident occurred, to shortly after 11 a.m. when she received the negative results of her EKG. We note from Ms. Broyard’s testimony on cross-examination that prior to the automobile accident her doctor had prescribed *800 Xanax for anxiety, and she took this drug in addition to a sleeping pill, Senaquon.
Ms. Broyard did not testify specifically that she suffered emotional distress or anxiety prior to having received the EKG results. However, the trial court was not unreasonable in concluding from Ms. Bro-yard’s conduct in demanding emergency medical attention and in light of her prior coronary artery disease for which she received angioplasty treatment, that she did suffer some anxiety relating to her heart condition.
This assignment of error is without merit.
INFINITY INSURANCE COMPANY’S SECOND ASSIGNMENT OF ERROR: The Trial Court’s award of $10,000 in general damages is unsupported by the evidence and should be reduced.
The judgment provides for $10,000 in “general and special damages for past, present and future physical and mental pain and suffering and medical expenses.” In its reasons for judgment, the trial court found that Ms. Broyard incurred $150 in emergency room treatment expenses on January 15, 1999. Furthermore, the trial court found that Ms. Broyard was treated at River Parish Chiropractic from [10January 27, 1999 to February 3, 1999 for soft tissue injuries to her neck, shoulder and back. The cost of the chiropractic treatment was $570.
According to the report of Robert R. Dale, D.C. of River Parish Chiropractic, his office treated Ms. Broyard from January 27, 1999 through February 3, 1999. She presented on January 27th, complaining primarily of left shoulder and arm pain, neck numbness, right knee pain, left ankle pain, right arm and wrist pain. Contrary to her trial testimony, Ms. Broyard told Dr. Dale that she had been wearing a seat belt when the auto accident occurred. There is no evidence in this report that River Parish Chiropractic treated Ms. Bro-yard for the chest wall injury caused by the automobile accident.
There is adequate record evidence to support an award of special damages in the amount of $150. There is no evidence, however, of a need for future medical treatment of the chest wall injury Ms. Broyard sustained in the automobile accident. Neither is there evidence of present or future physical or mental pain and suffering. There is no evidence of record tending to prove mental suffering anxiety except for the period from the time of the accident until Ms. Broyard received the EKG results.
Therefore, the elements of damage for which Ms. Broyard offered proof at trial are confined to:
(1) Special damages for past medical treatment: $150.00;
(2) Past physical pain and suffering connected with the chest wall injury, for which there was no referral or indication of the need for medical follow-up;
| ii (3) Past mental anxiety from the time of the accident until Ms. Broyard received the results of the KEG, or approximately 4 hours.
Applying these elements to the trial court’s in globo damage award, it is clear that Ms. Broyard received an award of general damages in the amount of $9,850 for a resolved soft tissue injury lasting for an undetermined time and four hours of anxiety concerning possible injury to her heart.
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Only after such a determination of *801 an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id.
liaWe must ask whether the awards are obviously the result of passion or prejudice and whether a general damage award of $9,850 bears a reasonable relationship to the $150 in special damages. Are we to conclude from the entirety of the evidence, viewed in the light most favorable to Ms. Broyard, the prevailing party in the trial court, that a rational trier of fact could not have fixed the award of general damages at $9,850 or that this is one of those “exceptional cases where such awards are so gross as to be contrary to right reason.” See, Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987); Youn v. Maritime Overseas Corp., supra.
The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it “shocks the conscience.” See, Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991).
In this case, the general damage award is approximately sixty-six times the amount of the special damages. Ms. Bro-yard suffered a sore chest for an undetermined time, and four hours of anxiety concerning her heart. An award of $9,850 under these particular circumstances is an abuse of the vast discretion referred to in Youn. Having determined that this is one of those rare cases in which the general damage award is such that in its relationship to the proven special damages and the circumstances of the case it can be said to shock the conscience, we then must determine the largest reasonable award to Ms. Broyard. The cases cited by Infinity’s counsel in brief demonstrate that in the past three years appellate courts in this State have approved awards of between $435 and $1,500 for a one-week soft-tissue injury to as much as $2,500 for an injury | ^requiring a month’s treatment and causing residual pain as of the date of trial. Since the record contains no recommendation or referral for post-emergency room treatment and there is no evidence of record that Ms. Broyard’s chest wall injury continued to cause her pain, we find that the highest reasonable award for her physical pain and suffering is $1,850. We have been referred to no cases involving recovery for anxiety for a period of time as short as the approximately four hours during which Ms. Broyard worried that her heart could have been affected by the automobile accident. Neither has our independent research discovered a similar case. Based on our complete review of the record, including the medical records and Ms. Broyard’s own testimony, we find the *802 highest reasonable award for Ms. Bro-yard’s anxiety from the time of the accident until the EKG results is $2,000.
MARIE LOUISE BROYARD’S FIRST ASSIGNMENT OF ERROR[3]: The Trial Court erred in not determining that Ms. Broyard’s knee injury was related to the collision.
The plaintiff in a personal injury case has the burden of proving by a preponderance of the evidence that it is more likely than not that her injuries resulted from an accident that was caused by the defendant’s fault. La.C.C. art. 2315; Mart v. Hill, 505 So.2d 1120, 1128 (La.1987); Creel v. S.A Tarver and Son Tractor Co., 537 So.2d 752 (La.App. 1 Cir.1988). Lawsuits may not be decided on mere speculation or suspicion. Id.
As the trial judge correctly observed in the reasons for judgment, there is no evidence that Ms. Broyard’s knee, ankle and wrist injuries were caused by the 114accident in question. Ms. Broyard denied during her direct examination that she had experienced any dizziness in the days after the automobile accident. Thus, from her own testimony, the trial court could conclude reasonably that Ms. Bro-yard’s fall at her daughter’s home was not caused by any dizziness associated with the automobile accident. On cross-examination, she testified that she has “definitely not” had any further problems since the accident with dizziness or vertigo. Likewise, the only testimony tending to show that Ms. Broyard’s fall on January 17 was caused by the accident in question was Ms. Broyard’s statement that she was “stiff all over” on January 17.
Ms. Broyard’s credibility was impeached on cross-examination when she denied having had any pre-accident neck or back problems. This testimony was contradicted by the records of the Ochsner Clinic that showed that she presented to the clinic on March 2, 1998 complaining of low back pain and on September 8, 1998 complaining of thoracic musculoskeletal pain between her shoulder blades. Her testimony denying pre-accident dizziness was contradicted by Ochsner records revealing that on August 31, 1998 she presented complaining of dizziness and had checked off on the history form “lightheadedness and dizziness.” According to the Ochsner records, she returned on September 8, 1998 again complaining of dizziness and probable vertigo, for which the physician suggested an MRI test. On December 8, 1998, Ochsner records indicate she was seen again complaining of vertigo. This complaint continued, according to Ochsner records, at visits on March 15,1999, March 29,1999 and April 5,1999.
|1BThe unanimous medical opinion was that the doctors could not say what caused Ms. Broyard to fall at her daughter’s home. Applying the Mart test, the record contains nothing more than Ms. Broyard’s speculation and suspicion that her fall was the result of the chest muscle injury she sustained two days earlier. The trial court was well within the limits of reasonableness in having found that Ms. Broyard failed to carry her burden of proving by a preponderance of evidence that her fall and its resultant injuries were caused by the previous automobile accident. Our review of the record in its entirety convinces us that the trial court’s findings are reasonable in light of that record.
*803 We are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Lewis v. State Through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the fact finder, we are cognizant of our constitutional duty to review facts[4], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745.
Our review of the deposition testimony of the three treating physicians together with the documentary evidence of Ms. Bro-yard’s post-automobile | ^accident treatment reveals no evidence that would connect the injuries sustained by Ms. Broyard on January 17 to the automobile accident.
When, as here, there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
A plaintiff is entitled to the presumption that her injuries resulted from an accident if she was in good health prior to the accident, and following the accident the symptoms of her disabling condition appeared and manifest themselves continuously afterwards, provided that the plaintiff has provided medical evidence showing a causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
In order to receive the benefit of this presumption, Ms. Broyard had the burden of proving three elements: (1) her good health prior to the automobile accident; (2) continuously manifesting symptoms following the accident; and (3) medical evidence connecting the accident with the injuries.
| i7Ms. Broyard offered no medical evidence connecting her ankle, wrist and knee injuries to the automobile accident. The record of the emergency room physician clearly shows that Ms. Broyard made no claim of injury to her knee, to her wrist or to her ankle; her complaints were of generalized soreness and a sharp chest pain. The doctor’s physical examination revealed no fractures and no limps or other objective evidence of any injury to Ms. Bro-yard’s lower extremities. At the time of her discharge, the doctor observed no evi *804 dence of injury to the legs, anides, knees or wrist.
He testified that more probably than not the injuries to Ms. Broyard’s knee, ankle and wrist that he observed after Ms. Bro-yard’s fall at her daughter’s home were caused by the fall, and not by the automobile accident. Dr. Wilson, the orthopedist Ms. Broyard saw on January 20, 1999, testified similarly and opined that it was highly unlikely that the automobile accident precipitated or caused the knee fracture.
Ms. Broyard has not established entitlement to the Housley presumption, nor has she provided evidence that would demonstrate to a reasonable person a causal connection between the automobile accident and the knee, wrist and ankle injuries.
For the foregoing reasons, we conclude that the trial court’s determination that the automobile accident did not cause Ms. Broyard’s knee, wrist and ankle injuries is not manifestly erroneous or clearly wrong. Therefore, this assignment of error is without merit.
J^MARIE LOUISE BROYARD’S SECOND ASSIGNMENT OF ERROR: The Trial Court erred in dismissing National Casualty Company, the uninsured motorist carrier, from the litigation.
Ms. Broyard has not briefed this issue and, in accordance with Rule 2-12.4, we may consider it abandoned. However, we note from the record that National was dismissed because the amount recovered was within the policy limits of the primary policy. In light of our determination of Ms. Broyard’s first assignment of error and of Infinity’s first and second assignments of error, Ms. Broyard’s second assignment of error is moot.
CONCLUSION AND DECREE
For the foregoing reasons, we amend the judgment in favor of Ms. Marie Louise Broyard to award special damages in the amount of $150; general damages for past physical pain and suffering in the amount of $1,850; and general damages for past mental anxiety in the amount of $2,000, for a total of $4,000. We affirm the judgment of the trial court, as amended.
JUDGMENT AMENDED IN PART AND, AS AMENDED, AFFIRMED.

. According to the trial court's reasons for judgment, Ms. Broyard was taken to Ochsner by ambulance; however, according to Ms. Broyard's uncontroverted testimony, she rode in the taxicab to the emergency room.

. The Reasons for Judgment refer from time to time to "December 15” and “December 17”, but we conclude this to have been a typographical error. Uncontroverted evidence and argument refers to the accident in question's having occurred on January 15 and to the second accident's having occurred on January 17.

. Ms. Broyard's appellate brief does not contain a specification or assignment of errors as required by Rule 2-12.4, Uniform Rules— Louisiana Courts of Appeal. We shall consider the “Issue Presented for Review” stated in brief to be Ms. Broyard’s assignment or specification of error.

. See, LSA-Const. Art. 5, section 10(B).