976 So.2d 774 (2008)
Wade SCHINDLER
v.
HARRAH'S LAS VEGAS, INC., d/b/a Harrah's New Orleans Casino, Harrah's New Orleans Management Co. and Harrah's Operating Co., Inc.
No. 2007-CA-0827.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 2008.
*776 Joseph G. Albe, New Orleans, LA, for Plaintiff/Appellee.
Robert H. Murphy, Jeffrey A. Raines, Murphy Rogers Sloss & Gambel, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
EDWIN A. LOMBARD, Judge.
Defendants, Harrah's Las Vegas, Inc. d/b/a Harrah's New Orleans Casino, Harrah's New Orleans Management Co., and Harrah's Operating Co., Inc., appeal the judgment of the trial court against them, which awarded Plaintiff, Wade Schindler ("Mr. Schindler"), $25,000 in damages for the aggravation of preexisting injuries.
Relevant Facts
On April 8, 2003, Mr. Schindler was sitting at a slot machine at Harrah's Casino in New Orleans when the handle of a money cart being pushed by a Harrah's employee brushed the back of his chair, pushing him against the slot machine, and allegedly causing him to aggravate preexisting injuries in his right wrist and left knee. At the time, Mr. Schindler did not believe he was injured and continued to play the slot machines. A few days later, Mr. Schindler called Harrah's to officially report the incident. During this conversation, Mr. Schindler claimed that he had injured his wrist as a result of the accident; however, he made no claim that he had injured his knee.
At the time of the incident, Mr. Schindler was already receiving treatment from Dr. Terry Habig for a preexisting injury to his left knee that had resulted from a 2002 car accident. In fact, Mr. Schindler had undergone surgery on the knee just two months before the Harrah's incident.
About two weeks after the Harrah's incident, Mr. Schindler returned to Dr. Habig for a scheduled post-operative follow-up examination of his knee. During this visit, Mr. Schindler reported to Dr. Habig that he injured his right wrist at Harrah's casino. *777 Dr. Habig ordered X-rays of the wrist, which indicated that Mr. Schindler suffered from an old, preexisting, degenerative wrist condition and that the Harrah's incident may have aggravated the condition. Dr. Habig diagnosed Mr. Schindler with a soft-tissue injury or sprain of the wrist. Mr. Schindler's wrist injury was treated with anti-inflammatory medication and home therapy for three months until which time Mr. Schindler was discharged from Dr. Habig's care.
Mr. Schindler returned to Dr. Habig eighteen months later again complaining of wrist pain. At this time, Dr. Habig referred him to Dr. Claude Williams. Mr. Schindler reported to Dr. Williams that he had injured his wrist at Harrah's casino but did not mention that he had injured his left knee as a result of the incident. Although Mr. Schindler did not disclose any preexisting wrist problems to Dr. Williams, his medical records indicated that he first began complaining of right wrist pain after a 2000 auto accident. Dr. Williams ultimately diagnosed Mr. Schindler with a degenerative condition, known as Keinbock's disease, of the right wrist.
Trial Court
Mr. Schindler filed suit against the Defendants alleging that the incident caused the exacerbation of his preexisting wrist condition. Trial began on January 23, 2007. At trial, Mr. Schindler claimed that after the Harrah's incident, he developed a clicking in his left knee. Mr. Schindler also testified at trial that he was considering undergoing surgery on his wrist.
Drs. Habig and Williams were called to testify on Mr. Schindler's behalf. Both doctors testified that the Harrah's incident only temporarily aggravated Mr. Schindler's wrist symptoms. Dr. Williams specifically testified that any aggravation caused by the Harrrah's incident did not alter the natural progression of Keinbock's disease, which had been progressing for several years before the Harrah's incident and was likely at stage II of IV at the time of the incident. According to Dr. Williams, by the time he began treating Mr. Schindler in March 2005, the disease had progressed to stage III, which is characterized by fragmentation of the lunate bone. In Dr. Williams' opinion, Mr. Schindler's disease would have progressed to stage III and would have eventually required surgery even without the Harrah's incident. Dr. Habig's testimony corroborated that of Dr. Williams. Both doctors testified that Mr. Schindler suffered only a three month wrist sprain and aggravation of his Keinbock's disease. Additionally, Dr. Habig testified that, in his opinion, Mr. Schindler's knee symptoms were not related to the Harrah's incident.
At the end of Mr. Schindler's case, defendants made an article 1672 motion for involuntary dismissal of Harrah's Las Vegas, Inc., and Harrah's Operating Co., on the basis that the casino was operated only by Harrah's New Orleans Management Company on the day of the incident and that these defendants could not be cast in judgment. The trial court granted the involuntary dismissal. Nevertheless, on March 12, 2007, the trial court rendered judgment against all three defendants in the amount of $25,000, plus medical specials, expert and witness fees and costs, determining that "defendants' employees were clearly negligent in failing to control the money cart, which struck plaintiff's chair." Mr. Schindler subsequently filed a motion to amend the trial court's judgment or for a new trial seeking an award for judicial interest. The trial court granted the motion and amended the judgment accordingly. This appeal followed.
Assignments of Error
On appeal, defendants assign two errors to the trial court. First, that the court *778 erred in rendering judgment against all three defendants when the court had previously dismissed Harrah's Las Vegas d/b/a Harrah's New Orleans Casino and Harrah's Operating Company. Additionally, defendants argue that the trial court abused its discretion in awarding general damages in the amount of $25,000 for a three month soft tissue injury.
Discussion
As a preliminary matter, we find that the trial court erred in casting Harrah's Operating Company and Harrah's Las Vegas, Inc. in judgment after it had already granted defendants' motion for involuntary dismissal dismissing Mr. Schindler's claims against these two entities. Therefore, the defendants' assertion that the judgment should have been against only Harrah's New Orleans Management Company is correct and we will amend the judgment accordingly.
We now turn to Defendants' second assignment of errorthat the general damages award of $25,000 to Mr. Schindler is excessive under the circumstances. In the present case, the trial court found that although Mr. Schindler had injured his right wrist in a previous accident and suffered from a preexisting degenerative wrist condition, he aggravated the condition as a result of the Harrah's incident and this aggravation lasted for approximately three months. The court also found that although Mr. Schindler had injured his left knee in a previous accident, which had required surgery, he complained of an additional clicking in his knee after the Harrah's incident. Based upon the aggravation of his preexisting injuries, the court awarded Mr. Schindler $25,000 in general damages.
The standard of review of damage awards is whether, after an articulated analysis of the facts, the court finds that the trial court abused its great discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce an award. Broyard v. Rainer, 03-0123, p. 11 (La.App. 4 Cir. 6/18/03), 850 So.2d 793, 801. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Id., p. 12.
In instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court. Theriot, at 1340. The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering. LeBlanc v. Stevenson, 00-0157, p. 6 (La.10/17/2000), 770 So.2d 766, 772.
Considering the fact that the injuries caused by the Harrah's incident were relatively minor, an award of $25,000 is shockingly high, especially when the trial court acknowledged, in its reasons for judgment, that Drs. Habig and Williams, Mr. Schindler's treating physicians, testified that the Harrah's incident only aggravated Mr. Schindler's preexisting wrist symptoms for a three month period. Moreover, the record indicates that Mr. Schindler did not report any knee injury or aggravation caused by the Harrah's incident to anyone at Harrah's and did not make such a claim until trial. Although Mr. Schindler did complain of a clicking and popping in his knee and additional swelling of the knee after the accident, Dr. Habig attributed these symptoms to the natural healing process of the knee after surgery. Dr. *779 Habig testified that, in his opinion, the alleged aggravation of Mr. Schindler's preexisting knee injury was not related to the Harrah's incident.
It is a well-settled principle that a tortfeasor takes his victim as he finds him and when a defendant's tortuous conduct aggravates a preexisting condition, the defendant must compensate the victim for the full extent of the aggravation. Lasha v. Olin Corp., 625 So.2d 1002, 1005, 1006 (La.1993). The plaintiff, however, is required to establish a causal link between the tortious conduct and the aggravation of his preexisting condition. The test to determine if that burden has been met is whether the plaintiff proved through medical testimony that it is more likely than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 and 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759; Maldonado v. Louisiana Superdome Com'n, 95-2490, p. 11 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, 1093, writ denied, 97-0469 (La.4/18/97), 692 So.2d 448. This issue is factual and is subject to the manifest error standard of review. Maranto, supra.
Mr. Schindler provided no medical testimony to show that that the alleged clicking and/or popping symptoms in his knee were caused by the Harrah's incident. We find, therefore, that Mr. Schindler did not meet his burden of proving, through medical testimony, that his additional knee symptoms were attributable to the Harrah's incident as opposed to his recent knee surgery. Although the trial court did not distinguish which part of the award, if any, was attributable to Mr. Schindler's knee injuries, any compensation for the alleged aggravation to his knee would have been awarded in error.
On the other hand, we do find the medical evidence was sufficient to establish that Mr. Schindler suffered a three-month aggravation of his preexisting wrist condition. This court previously held that an award of $2,500 per month for general damages for soft tissue injuries while plaintiff is actively treating is a reasonable award. Dolmo v. Williams, 99-0169 (La. App. 4 Cir. 9/29/99), 753 So.2d 844, 848. Therefore, we find that the highest reasonable award for the three month aggravation of Mr. Schindler's preexisting wrist condition is $7,500. An award of $25,000 was an abuse of the trial court's vast discretion. Accordingly, we amend the trial court's judgment to reflect a general damage award of $7,500 for the three month aggravation of Mr. Schindler's preexisting wrist injury.
For the foregoing reasons, we amend the judgment in favor of Mr. Schindler to award general damages in the amount of $7,500 and against Harrah's New Orleans Management Company.
JUDGMENT AMENDED.