MAX N. TOBIAS, JR., Judge.
Bln this personal injury case, the plaintiff/appellee, Michael Hammond, alleges that he was injured when a piece of the ceiling in the apartment he was renting from the defendant/appellant, Ison Rah-saana, fell on his head. After reviewing the record and applicable law, we affirm the judgment.
In June 2007, Mr. Hammond rented an apartment from Ms. Rahsaana;[1] the parties had known each other for about twenty years. The apartment, Apartment D, was located in a four-plex at 2105 Columbus Street in New Orleans. The rent was $750.00 per month; Mr. Hammond told Ms. Rahsaana that the Federal Emergency Management Agency (“FEMA”) would be paying his rent, a fact not unusual in the aftermath of Hurricane Katrina in 2005. The evidence demonstrates, however, that Ms. Rahsaana received nothing from FEMA until January 2008, after Mr. Hammond had vacated the apartment.[2]
*1209 [gMr. Hammond testified that, in July 2007, he reported to Ms. Rahsaana that sheetrock was falling from the living-room ceiling; no repairs were ever made. Mr. Hammond also specifically denied being in a car accident shortly before (5 October 2007) the incident in question.
Mr. Hammond testified that on 7 October 2007, at approximately 4:00 a.m., while he was praying in his living room, a two-foot square part of the ceiling fell on his head and neck.[3] No pictures of the ceiling or fallen sheetrock were admitted into evidence. Mr. Hammond stated that he sought medical treatment the following day with his family doctor, Henry Evans, M.D., who sent him for a CT scan of his head. Medical records from Diagnostic Imaging, the facility that performed the CT scan, reported normal findings. Other than the order for a CT scan, no other medical records from Dr. Evans are in the record before us.
About one month later, Mr. Hammond’s attorney sent him to be examined by George A. Murphy, M.D.; he was examined on 12 November 2007. Dr. |sMurphy did not testify at trial, but his report was received in evidence. In his report to the referring attorney, he reported that Mr. Hammond had diminished extension and rotation to the left of the cervical spine with spasm present on the left of the base of^ his neck and shoulder. Dr. Murphy specifically noted that Mr. Hammond told him that he had been in a prior motor vehicle accident in October in which he injured only his lower back and was treated at Tulane Hospital; Mr. Hammond reported that the area was well at the time of the visit. Dr. Murphy diagnosed him with a contusion to the head and cervical strain as a result of the injury and ordered a MRI of his cervical spine. Dr. Murphy stated that Mr. Hammond would return for routine follow-up with his office. However, Mr. Hammond neither had the cervical MRI nor returned to see Dr. Murphy. Mr. Hammond testified that he suffered headaches and neck pain for about the next seven months.
Ms. Rahsaana testified that in late September 2007, Mr. Hammond first informed her that there was a small leak in the living room ceiling of the apartment. She had a contractor look at it; the contractor said that there was a small leak in the roof that would have caused discoloration in the ceiling. The record is unclear as to whether the leak was actually repaired at that time.
Ms. Rahsaana testified that about a week later, on 5 October 2007, she wit *1210 nessed the plaintiffs involvement in a motor vehicle accident in front of her apartment building. He was driving up Columbus Street when he was hit from the passenger side; his car was pushed up into Ms. Rahsaana’s yard. She testified that |4the car was heavily damaged and stayed parked in her yard until she had it towed away. Mr. Hammond did not complain to her of any head or neck injuries as a result of the accident. The accident involving the ceiling occurred a day or two later. When she observed the ceiling after the accident, the “entire ceiling” had been pulled down.
Mr. Hammond subsequently sued Ms. Rahsaana and her insurance company for damages resulting from the fallen ceiling.[4] Shortly before trial, on 13 February 2013, the following letter was sent to Mr. Hammond’s counsel by Dr. Murphy:
Mr. Michael Hammond was evaluated in my office November 12, 2007.
All of my findings on examination, the diagnosis of contusions of the head and cervical strain, the treatment rendered and my bill for $500 were all more probably than not related to Mr. Hammonds [sic] accident of October 7, 2007.
A bench trial was held on 4 March 2013, at which both parties testified; they were the only witnesses. Much of the evidence was hearsay to which neither party objected. The court rendered judgment in favor of the plaintiff the following day and awarded the amount of $6,000.00 in general damages, $1,416.50 in special damages, along with judicial interest and court costs. In its reasons for judgment, the trial court relied on the limited medical records that were admitted into the record in lieu of live testimony, noting that the parties stipulated to the authenticity and admissibility of the records and the amount of the medical expenses.[5] The |Bcourt found that the evidence presented at trial established that on 7 October 2007, Mr. Hammond sustained a soft-tissue injury that took seven months to resolve. This timely appeal followed.
It is well-established law that we review the factual findings of the trial court for manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). The standard of review applicable to fact findings of the trial court has been clearly enunciated by our Supreme Court in Rabalais v. Nash, 06-0999, p. 4 (La.3/9/07), 952 So.2d 653, 657:
It is well-settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong.... To reverse a fact-finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where the jury’s findings are reasonable, in light of the record reviewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the *1211 trial court’s ruling is manifestly erroneous, or clearly wrong.
Where two permissible views of the evidence exist, the fact-finder’s choice cannot be manifestly erroneous or clearly wrong. The appellate court “must be cautious not to re-weigh the evidence or to substitute its own factual findings” for those of the trial court. Eisenhardt v. Snook, 08-1287, p. 6 (La.3/17/09), 8 So.3d 541, 545. The issue to be resolved by a reviewing court is whether the factjñnder’s6 conclusion was reasonable. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).
In particular, the deference to a trial court’s ability to evaluate the credibility and make reasonable inferences of fact, to experience the immediacy of seeing and hearing witnesses in the course of their testimony, is a well-established precept of our law. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
We are required to give the great deference to the trial court in this case, even though we would have adjudicated this case differently. The trial court found that Mr. Hammond established medical causation; in other words, he proved to the trial court’s satisfaction that the falling ceiling, rather than the car accident one or two days earlier, was the cause of his cervical strain. Although we, if the triers of fact hearing the evidence first hand, would give substantial weight to Mr. Hammond’s apparently inaccurate claim that he had not been in a car accident, the trial court apparently believed him in spite of the contradiction with Dr. Murphy’s notations that Mr. Hammond had acknowledged the accident to him.[6] Further, Ms. Rahsaana witnessed the accident; the trial court apparently gave no weight to her testimony, which is within the trial court’s discretion. Obviously, the court gave no weight to Ms. Rahsaana’s testimony that the damage to the vehicle was on the passenger (right) side of the car, rendering it inoperable such that it had to be towed from her lawn. We have no medical records of Mr. Hammond’s treatment |7at Tulane, if in fact he sought medical treatment, and only his assurance to Dr. Murphy that his low-back injury was fully resolved just a month later. If those records had been part of the record on appeal, such might have called into question Dr. Murphy’s opinion. We have no medical records from Dr. Evans to support Mr. Hammond’s contention that all his injuries arose from the fallen ceiling, noting that the medical records could not have been destroyed in a hurricane that occurred two years before the events in question. We note Mr. Hammond never had the MRI ordered by Dr. Murphy or returned to Dr. Murphy for medical care in spite of his insistence that his injuries lasted about seven months.[7]
Under Louisiana law, a plaintiff in a tort case must prove causation by a preponderance of the evidence. Lasha v. Olin Corp., 625 So.2d 1002,1005 (La.1993); Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759 (holding that a plaintiff in a personal injury suit has the burden of proving a causal relationship between the injury and the accident which caused the injury). Causation is a question of fact and is subject to the manifest error standard of review. Green v. K-Mart Corp., 03-2495, p. 3 (La.5/25/04), 874 So.2d 838, *1212 841. Expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge. Chavers v. Travis, 04-0992, p. 10 (La.App. 4 Cir. 4/20/05), 902 So.2d 389, 395 (citing Hutchinson v. Shah, 94-0264, p. 3 (La.App. 1 Cir. 12/22/94), 648 So.2d 451, 452). Because of the close proximity of the two accidents, Mr. Hammond was required to present expert medical testimony to exclude the motor vehicle accident, if it happened, as a cause of all or part of his injures. This the trial court apparently found, was established by Dr. Murphy’s letter.
In light of the testimony and evidence in the record on appeal, we cannot say that the trial court was manifestly or clearly in error that it was more probable than not the. incident on 7 October 2007 was the sole cause of Mr. Hammond’s injuries. Although we would find if we were the initial fact-finders that it is just as probable that the automobile accident that occurred a day or two prior to the falling ceiling incident caused and/or contributed to Mr. Hammond’s injuries, the trial court found contrariwise. The evidence in the record can reasonably be read to preponderate ever so slightly in Mr. Hammond’s favor. As such, we find that Mr. Hammond has carried his burden of proof.
Based on the foregoing, we affirm the judgment in favor of Mr. Hammond.

AFFIRMED.

LOMBARD, J., Dissents with Reasons.
LEDET, J., Concurs in the Result.

. The parties agree that a lease was signed; a copy of the lease is not a part of the appellate record. Such moots Ms. Rahsaana’s arguments that Mr. Hammond’s failure to pay rent is a defense to show that he sustained no injury from the falling ceiling. See La. C.C. art. 2317.1. However, an offset of unpaid rent could be applied to the amounts that the trial court awarded to Mr. Hammond; from the record, we cannot tell whether the trial court did or did not apply such an offset without discussing same in the reasons for judgment.

. Under cross examination, Ms. Rahsaana was questioned about her contact with FEMA and the check from FEMA made out to her in the amount of $750.00. Initially, Mr. Hammond’s counsel objected to Ms. Rahsaana’s responses as hearsay. However, the trial court then asked several questions of Ms. Rahsaana, who testified further as to what she was told by FEMA. After this exchange, Mr. Hammond’s counsel failed to object to this additional hearsay, thereby waiving the objection. Consequently, we summarize that testimony as follows.
*1209 When Mr. Hammond rented the apartment from Ms. Rahsaana, he told her that FEMA would be paying his rent under the FEMA Rental Assistance Program. Her other three units were also being rented under the same assistance program; in those cases, the rental payments from FEMA were being sent directly to Ms. Rahsaana because she had set up the accounts with FEMA. However, Mr. Hammond wanted to set up the account himself. Ms. Rahsaana allowed him to do so, trusting that he would give her the money he received from FEMA. At that time, Ms. Rahsaana was living in Oxford, Mississippi. Every time Ms. Rahsaana came to town, she asked him for the rental payments and he stated that the money was coming; she believed him because they were friends and he was a pastor. Eventually, FEMA contacted her because Mr. Hammond wanted to move his lease somewhere else and it was then that she learned that Mr. Hammond was indeed receiving funds through FEMA but had never paid her for the rent. Although Ms. Rahsaana filed a reconventional demand and presented her claim at trial for unpaid rent from June 2007 to February 2008, she did not herself appeal or answer the appeal to recover the monies. Therefore, that issue is not before us and cannot be considered.

. Mr. Hammond stated that he is a pastor and, at the time of the accident, was the full-time pastor at the New Life Evangelistic Church.

. Ms. Rahsaana’s insurance company was granted summary judgment dismissing it after demonstrating that it did not provide personal liability insurance covering the accident at issue.

. This court is puzzled by the trial court’s statement that: "Dr. Evan’s records were destroyed during Hurricane Katrina, except for a copy of a prescription for a CT scan he ordered for the plaintiff. This test was performed on October 11, 2007 at Diagnostic Imaging.” [Emphasis supplied.] Hurricane Katrina occurred on 29 August 2005, more than two years before this accident occurred.

. Evidently, Mr. Hammond informed Dr. Murphy of the car accident because it was specifically referenced by Dr. Murphy in his letter of 12 November 2007.

. The parties stipulated to the authenticity and admissibility of the medical records introduced by the plaintiff. We are bound by law to review this case on the record before us.