| | | |
|---|---|---|
| **KIMBERLY R. ROBERTS** | * | **NO. 2019-CA-1038** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **GEORGIA BOXER AND** | * | |
| **CHUBB NATIONAL** | | **FOURTH CIRCUIT** |
| **INSURANCE COMPANY** | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-06456, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge Dale
N. Atkins)

**BROWN, J., CONCURS IN THE RESULT**

**ATKINS, J., CONCURS IN THE RESULT**

David P. Vicknair
Hope E. Hughes
SCOTT VICKNAIR HAIR & CHECKI, LLC
909 Poydras Street, Suite 1100
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLANT

Joseph Maselli, Jr.
Lauren B. Dietzen
Lauren N. Baudot
PLAUCHE' MASELLI PARKERSON LLP
701 Poydras Street, Suite 3800
New Orleans, LA 70139

      COUNSEL FOR DEFENDANTS/APPELLEES

**AMENDED AND AFFIRMED AS AMENDED**

**November 18, 2020**

RLB

This appeal is taken from a jury verdict that found Kimberly Roberts'

injuries were not caused by the vehicular accident that occurred on July 6, 2016.

For the reasons that follow, the verdict, adopted as the judgment, is amended, and

affirmed as amended.

## *Facts*

On July 6, 2016, Kimberly Roberts was a passenger in a vehicle driven by

her husband, Scott Roberts.  While traveling on North Claiborne Avenue in New

Orleans, Louisiana, the Roberts' vehicle was struck on the left rear side by a

vehicle driven by Georgia Boxer.  After assessing the damages, the parties agreed

to pull into a nearby gas station to wait for the police to arrive.   After

approximately seven hours, a police officer arrived, conducted interviews, and

wrote a report.  Once the police officer was done, the Roberts proceeded to St.

Bernard Parish Hospital to be examined for their injuries.

Thereafter, on July 11, 2016, Mrs. Roberts presented for examination by

physician, Dr. Godwin Ogbuokiri.   He documented her complaints and prescribed

1

treatment for Mrs. Roberts. Dr. Ogbuokiri's records indicate that, in February of 2017, Mrs. Roberts had completed her treatment and her condition had improved. In March 2017, Mrs. Roberts presented to her primary care physician, Dr. Erica Jackson, complaining of right shoulder pain. She was referred to an orthopedic surgeon who determined she had a torn rotator cuff. That condition required surgery and post-surgery rehabilitation.

A lawsuit was filed against Ms. Boxer and her insurer, Great Northern Insurance Company ("Great Northern"). In that lawsuit, Mrs. Roberts related her prior soft tissue injuries and her torn rotator cuff injury, surgery, and rehabilitation to the July 6, 2016 vehicular accident. At trial, the jury rejected the contention that the July 6, 2016, caused Mrs. Roberts' injuries. This appeal followed.

*__Assignments of Error__*

On appeal, Mrs. Roberts' assigns errors on the part of the trial court and the jury. Specifically, Mrs. Roberts maintains that the trial court erred in several of its evidentiary rulings: 1) not qualifying Dr. Ogbuokiri as an expert in orthopedic surgery; 2) admitting uncertified medical records into evidence; 3) allowing Derrick DeGoot's testimony regarding a telephone conversation with Scott Roberts; 4) precluding Scott Roberts from being called as a rebuttal witness; and 5) admitting the body worn camera footage of the officer that responded to the accident.

In addition to the evidentiary challenges, Mrs. Roberts' sixth assignment of error claims that the jury erred in failing to award her damages for the injuries to her neck, back, knee, and head.

<u>*Evidentiary Rulings*</u>

A trial court has vast discretion in evidentiary matters. As such, evidentiary rulings will not be disturbed on appeal absent a clear abuse of discretion. *Yokum v. Funky 544 Rhythm and Blues Cafe*, 2016-1142, p. 22 (La.App. 4 Cir. 5/23/18), 248 So.3d 723, 740.

### <u>*Failing to qualify Dr. Ogbuokiri as an expert in orthopedic surgery*</u>

In Mrs. Roberts' first assignment of error she complains that the trial court abused its discretion in failing to qualify Dr. Ogbuokiri as an expert in orthopedic surgery. Dr. Ogbuokiri testified that during his fellowship he was involved with numerous surgeries and experienced more surgeries related to trauma while practicing at the University of Nigeria Nsukka for thirty years. He further testified that over the last several decades he has been in family practice as a primary care physician.

Dr. Ogbuokiri's own testimony established that it had been decades since he performed any surgery. Additionally, he acknowledged that he was never an orthopedic surgeon and had no specialty in rotator cuff surgery. Considering Dr. Ogbuokiri's past experience and current practice Mrs. Roberts offered him as an expert in primary care and surgery. The trial court accepted Dr. Ogbuokiri as an expert in primary care, but not surgery. The trial court reasoned that since surgery was not Dr. Ogbuokiri's current specialty and he did not perform the surgery in this case, he was not qualified to discuss Mrs. Roberts' surgery. The trial court further stated that Mrs. Roberts' orthopedic surgeon, Dr. Russell Russo, had been

3

accepted as an expert in general surgery and orthopedic surgery, and he testified as to the surgery and his opinion of the causation of the injury.

It is well settled that when a party fails to lodge a contemporaneous objection to evidentiary rulings the party waives the right to complain on appeal. *Aisola v. Beacon Hosp. Management, Inc.*, 2013-1101, p. 10 (La.App. 4 Cir. 4/2/14), 140 So.3d 71, 78 (citing *St. Martinville, L.L.C. v. Louisiana Tax Comm'n*, 2005-0457, p. 5 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 42). Here, the record does not indicate there was an objection lodged at the time of the trial court's ruling. Therefore, this assignment of error is not properly before this Court.

### *Admitting uncertified medical records into evidence*

At trial, authenticated certified medical records from St. Bernard Parish Hospital, pertaining to Mrs. Roberts visit on July 6, 2016, were entered into evidence. In addition to the certified records, records that Mrs. Roberts sent to a claims adjuster for Great Northern to document her bodily injury claim were also admitted into evidence. During her testimony, Mrs. Roberts acknowledged that she was in communication with Great Northern's claims adjuster, Derick DeGroot. Mr. DeGroot requested her medical records and instructed Mrs. Roberts to write her claim number on each page of the document. At trial, Mrs. Roberts was shown the medical records with the claim number written on the pages and she identified the exhibit as the medical records she sent to Mr. DeGroot.

After establishing the records were the ones submitted by Mrs. Roberts to the claims adjuster, the records were compared to the certified medical records

4

provided by St. Bernard Parish Hospital. The records presented to the claims adjuster indicated more extensive injuries than provided for on the certified records. More specifically, the uncertified record had additional checks and other markings that identified a broader range of injuries and restrictions than reported in the certified records. Mrs. Roberts agreed that the records were noticeably different, but denied altering the records in any way.

On appeal, Mrs. Roberts argues that medical records that are not certified are inadmissible. That argument fails here. There is no dispute that the full certified medical record from St. Bernard Parish Hospital was admitted into evidence to prove Mrs. Roberts' treatment. The uncertified records were not produced to prove treatment but to prove that the documents Mrs. Roberts sent to Great Northern were markedly different. Further, Mrs. Roberts acknowledged and identified the documents as the ones she personally obtained from St. Bernard Parish Hospital and sent to Great Northern.

This Court has previously found that uncertified medical records identified by a plaintiff are admissible. *See Daspit v. Barber* 2000-1221, p. 9 (La.App. 4 Cir. 4/11/01), 786 So.2d 962, 969 (testimony from plaintiff regarding receipt and of bills and treatment was sufficient to allow the introduction of the records to prove the fact of treatment and its cost), *Jackson v. Tyson*, 526 So.2d 398, 401 (La.App. 4 Cir. 5/12/88) (plaintiff identified her medical bills at trial as proof of the cost of treatment; such evidence was not hearsay); *see also Webster v. Ballard*, 2005-2247

(La.App. 1 Cir. 3/2/07), 961 So.2d 13. Accordingly, there was no abuse of discretion by the trial court in admitting the uncertified medical records.

### *Allowing Derrick DeGoot's testimony regarding a telephone conversation with Scott Roberts and Precluding Scott Roberts from being called as a rebuttal witness*

These assignments of error are discussed together because each complaint stems from Mr. DeGroot's telephone conversation with Mr. Roberts. In Mr. Roberts' initial testimony, he stated that his wife sustained injuries in the July 6, 2016 accident. Later in his testimony, he was asked several times if he discussed his wife's injuries with a claims adjuster from Great Northern. Mr. Roberts testified that he had no recollection of a telephone conversation where he discussed his wife's injuries with the claims adjuster at Great Northern. He further explained that his lack of recollection could be attributed to his drug use at the time.

Mr. DeGroot testified that, although he was no longer the claims adjuster on Mrs. Roberts' claim, he received a telephone call from Mr. Roberts. During that call, Mr. Roberts voiced his concern over the validity of his wife's injury claims from the July 6, 2016 accident. According to Mr. DeGroot, Mr. Roberts stated that he did not think Mrs. Roberts injured her back. Mr. Roberts further stated that she had made prior claims for back injuries and he further stated that he thought she was not being truthful about her head injury. On cross-examination, Mr. Roberts' heroin use and his separation from Mrs. Roberts at the time of the telephone conversation were raised as possible motivation for Mr. Roberts making those statements to Mr. DeGroot.

Mrs. Roberts objected to Mr. DeGroot's testimony on the grounds that it was inadmissible hearsay. The trial court overruled the objection finding that the

statement was admissible for impeachment purposes. Article 613 of the Louisiana Code of Evidence allows for the use of extrinsic evidence to attack the credibility of a witness if he has been given the opportunity to admit the fact and has failed to do so. La. C.E. art. 613. Additionally, La. C.E. art. 607 permits the introduction of a prior inconsistent statement, even if it is inadmissible hearsay, if it is used for the sole purpose of attacking the credibility of a witness. La. C.E. art. 607(D)(2); *See also* Frank L. Maraist, 19 La. Civ. L. Treatise, Evidence and Proof § 9:6 (2012 ed.) ("A prior inconsistent statement, when offered to attack the witness' credibility, is not hearsay; the fact that the words were spoken has independent relevance, regardless of the truth of the words.").

At trial, Mr. Roberts testified that his wife had been injured in the July 6, 2016 accident. On cross-examination, Mr. Roberts was asked if he recalled a conversation he had with a claims adjuster from Great Northern. He responded numerous times that he did not recall any such conversation. Mr. DeGroot's testimony was presented to establish that Mr. Roberts had previously made statements about his wife's injuries that were inconsistent with his trial testimony. Mr. DeGroot's testimony fits squarely into the hearsay exception. Accordingly, the trial court did not abuse its discretion in overruling the hearsay objection.

Mrs. Roberts further contends that if Mr. DeGroot's testimony was admissible, the trial court incorrectly denied Mr. Roberts right to rebut the testimony. In accordance with La. C.E. art. 611, the plaintiff in civil litigation "shall have the right to rebut evidence" presented by their opponent. La. C.E. art. 611(E). The purpose of rebuttal evidence is to "explain, repel, counteract, or disprove facts" put into evidence by an opposing party. *State v. Hatfield*, 2013-0813, p.32 (La.App. 4 Cir. 7/2/14) 155 So.3d 572, 593-94 (quoting *State v. Tyler*,

7

97-0338, p. 17 (La. 9/9/98), 723 So.2d 939, 948-49). Mrs. Roberts sought to present rebuttal testimony from Mr. Roberts to explain the context of the conversation with Mr. DeGroot. The trial court declined to allow Mr. Roberts to be called as a rebuttal witness for this purpose because in his original testimony he repeatedly stated that he could not recall the conversation. Therefore, the rebuttal testimony would have been substantively different from his initial testimony. Just as in other evidentiary rulings, the trial court has vast discretion in admitting or refusing to admit rebuttal evidence. *Yokum*, 2016-1142, p. 27, 248 So.3d at 743 (citing *Beecher v. Keel*, 1994-0314, p. 9 (La.App 4 Cir. 9/29/94), 645 So.2d 666, 671). Under these circumstances, we cannot find there was an abuse of discretion on the part of the trial court.

### *Admitting the body worn camera footage of the officer that responded to the accident*

In this assignment of error Mrs. Roberts contends that the trial court's admittance of body cam footage taken by the police officer that responded to the July 6, 2016 accident was error because the video was not properly authenticated. During Georgia Boxer's testimony, the police officer's body cam video was played.[1] Ms. Boxer identified herself and the scene of the accident.

In *Markerson v. Composite Architetural Design Sys., LLC*, 2017-1252, pp. 13-14 (La.App. 1 Cir. 7/10/18), 255 So.2d 1065, 1075, found that the plaintiff was able to authenticate videos and photographs by identifying the date, time, method of recording, and what the images depicted. Here, Ms. Boxer identified herself at the scene of the accident, on the day of the accident, identified the officer, and also identified the vehicles involved in the accident. Additionally, the vehicles and

---

[1] Transcripts in the record indicate that the video was admitted without audio.

associated damages were documented in other photographs admitted into evidence. The trial court did not abuse its discretion in admitting the video into evidence.

### Causation and Damages

#### Causation

Lastly, Mrs. Roberts challenges the jury's failure to award her damages for the injuries to her neck, back, knee, and head. Louisiana law requires a plaintiff in a tort case to prove causation by a preponderance of the evidence. *Hammond v. Rahsaana*, 2013-1202, p. 7 (La.App. 4 Cir 2/26/14), 135 So.3d 1207, 1211 (citing *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La. 1993); *Maranto v. Goodyear Tire & Rubber Co.*, 1994-2603, 94-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 7590. Causation is a question of fact, and factual findings cannot be set aside unless there is a finding of manifest error. *White v. Cox Operating, LLC,* 2016-0901, p. 4 (La.App. 4 Cir. 4/5/17), 229 So.3d 534, 538 (citing *Hall v. Folger Coffee Co.,* 2003-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98). For an appellate court to find manifest error the court must first find that based on the record a reasonable factual basis does not exist for the trier of fact's findings; and the court must further determine if the record establishes the finding is clearly wrong. *Harold A. Asher, CPA, LLC v, Haik,* 2012-0771, p. 4 (La.App. 4 Cir. 4/10/13), 116 So.3d 720, 723-24.

At trial, the defense aggressively challenged whether the July 6, 2016 accident was the cause of Mrs. Roberts rotator cuff tear that resulted in surgery. However, Mrs. Roberts' neck, back, knee, and head injuries, which were documented on the day of the accident by St. Bernard Parish Hospital and later by Dr. Ogbuokiri, were directly related to the July 6, 2016 accident. The medical records indicate that Mrs. Roberts was diagnosed with these injuries on the day of

the accident. She later followed up with a primary care physician and attended physical therapy for these injuries for approximately seven months before being discharged. At trial, Mrs. Roberts' treating physician and medical expert, Dr. Ogbuokiri related her neck, back, knee, and head injuries to the July 6, 2016 accident. That testimony was uncontroverted. The record supports that Mrs. Roberts proved causation for those specific injuries by a preponderance of the evidence. Accordingly, the jury was clearly wrong in failing to find causation as to those injuries.

### *Damages*

The record reveals that Mrs. Roberts' neck, back, knee, and injuries resulted in seven months of physical therapy. The record further indicates that the non-surgical injuries and treatment represented fifty percent of the past medical expenses/special damages or $5,800.00. Thus, this Court awards Mrs. Roberts $5,800.00 for past medical expenses.

Next, this Court must determine reasonable general damages for Mrs. Roberts' injuries. General damages are speculative and compensate for mental or physical pain and suffering, inconvenience, and loss of enjoyment of life. *See Clarkston v. Louisiana Farm Bureau Cas. Ins. Co.*, 2007-0158, p. 38 (La.App. 4 Cir. 7/2/08), 989 So.2d 164, 189-90. In order to assess general damages, this Court determines general damages by reviewing past awards for similar injuries. *See Romano v. Metropolitan Life Ins. Co.*, 2016-0954, p. 12 (La.App. 4 Cir. 5/24/17), 221 So.3d 176, 184. In *King v. National General Assurance Co*, 2018-0281, p. 16 (La.App. 5 Cir. 12/12/18), 260 So.3d 1298, 1310, the appellate court held that a $35,000.00 award for general damages for seven months of treatment for back and neck pain was appropriate. Similarly, in *Thomas v. Morris*, 51,112, p. 5 (La.App.

10

2 Cir. 1/11/17), 211 So.3d 647, 651, the court of appeal found that the minimum acceptable general damages award for three months chiropractic treatment for headaches, back and neck pain was $10,000.00. Considering the general damages awards in *King* and *Thomas*, we find $25,000.00 to be a reasonable award of general damages to compensate Mrs. Roberts for injuries.

## *Conclusion*

For the reasons discussed, the judgment is amended to award Kimberly Roberts $5,800.00 in past medical expenses and $25,000.00 in general damages. In all other respects, the jury verdict is affirmed.


**AMENDED AND AFFIRMED AS AMENDED**